```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
NORTHERN SHIPPING FUNDS I, LLC,      :    12 Civ. 3584 (JCF)
                                     :
            Plaintiff,               :       MEMORANDUM
                                     :       AND  ORDER
                                     :
     - against -                     :
                                     :
ICON CAPITAL CORP., BOA SUB C AS,    :
BOA DEEP C AS, BOA HOLDING AS,       :
BOA OFFSHORE AS, and                 :
TAUBATKOMPANIET AS,                  :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
TAUBATKOMPANIET AS, BOA HOLDING AS,  :
BOA SUB C AS, BOA OFFSHORE AS, and   :
BOA DEEP C AS,                       :
                                     :
            Counter Claimants,       :
                                     :
     - against -                     :
                                     :
ICON CAPITAL CORP.,                  :
                                     :
            Counter Defendant.       :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Plaintiff Northern Shipping Funds I, LLC ("Northern") brings this action against defendants Icon Capital Corporation ("Icon") and Boa Sub C AS, Boa Deep C AS, Boa Holding AS, Boa Offshore AS, and Taubãkompaniet AS (collectively "Boa").  This lawsuit relates to and arises from a prior lawsuit, Icon Capital Corp. v. Boa Sub AS, 11 Civ. 1746 (the "Prior Action"), where Icon sued Boa for failing to complete an agreed-upon financing transaction.  The parties eventually entered into an agreement settling that litigation.  In the instant suit, Northern alleges that Icon did not own the exclusive rights to settle the case against Boa in the

Prior Action and that Northern also owned those claims.   As to Icon, Northern asserts claims of breach of contract, unjust enrichment, money had and received, constructive trust, and breach of fiduciary duty; as to Boa, it asserts a claim of breach of contract.   The parties have consented to my jurisdiction for all purposes, in accordance with 28 U.S.C. § 636(c).   Icon now moves to dismiss the breach of fiduciary duty and constructive trust claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the reasons set forth below, the motion is granted.

<u>Background</u>

In accordance with the standard for assessing a motion to dismiss, the allegations in the complaint are taken as true, and all reasonable inferences are drawn in the plaintiff's favor.   In addition, I have considered documents that are incorporated by reference into the complaint or integral to the complaint.   <u>See Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153-54 (2d Cir. 2002); <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).

On September 17, 2010, Northern, Icon, and Boa entered into a binding contract (the "Commitment Letter") under which Northern and Icon would provide Boa with a $70,000,000 loan, bearing an interest rate of 15.75% per annum (the "transaction").   (Complaint ("Compl."), ¶¶ 14, 19; Letter of C. Tobias Backer and John Hartigan dated Sept. 16, 2010 (the "Commitment Letter"), attached as Exh. A to Compl.).   The Commitment Letter identified Northern and Icon collectively as the "Arrangers" and the "Subordinated Lenders."

(Compl., ¶ 15).   According to the complaint, as Arrangers and Lenders, Icon and Northern were co-venturers. (Compl., ¶¶ 50, 56). The Commitment Letter also identified Icon as the "Agent" and the "Security Trustee." (Compl., ¶ 16).   Northern and Icon jointly drafted the Commitment Letter, and both their corporate logos appear at the top of each page. (Compl., ¶ 18).   The Commitment Letter was signed by C. Tobias Back, Senior Director of Icon, and was to be signed by John Hartigan, Senior Investment Manager of Northern. (Compl., ¶ 18 & n.1).

The Commitment Letter provided that Boa was to pay Northern and Icon Upfront and Arrangement Fees, totaling $2,450,000. (Compl., ¶ 20). Upon signing the Commitment Letter, Boa was to pay an earnest money deposit to Northern and Icon of $300,000; Boa complied by paying $299,985 to Icon as the Agent. (Compl., ¶ 21). The Commitment Letter further provided that if Boa were to withdraw from the transaction prior to closing, it would pay Northern and Icon 50% of the Upfront and Arrangement Fees, minus the earnest money deposit. (Compl., ¶ 22).

Shortly before the transaction was expected to close, Boa informed Northern and Icon on December 15, 2010, that it was withdrawing from the transaction. (Compl., ¶ 23). On December 23, 2010, Northern and Icon advised Boa that under the Commitment Letter they were entitled to no less than 50% of the Upfront and Arrangement Fees as well as reimbursement of all legal fees, travel costs, and other expenses incurred by them in preparing the transaction. (Compl., ¶ 24).

3

On January 20, 2011, Icon informed Northern of its intention to pursue legal action against Boa and inquired as to whether Northern was interested in joining the lawsuit. (Compl., ¶ 25). Northern declined, stating it preferred to reach a settlement with Boa through negotiation. (Compl., ¶ 25). Northern also declined to join because Boa was close to bankruptcy and because Icon refused to consult Northern about choice of counsel and litigation strategy. (Compl., ¶ 25). During that exchange and subsequent ones, Northern reminded Icon that Northern would not waive its rights under the Commitment Letter regarding Icon's duty to represent and protect Northern's interests in any legal action against Boa. (Compl., ¶¶ 25-27).

In a complaint dated March 14, 2011, Icon initiated the Prior Action against Boa. (Compl., ¶ 28). Once the complaint was filed in the Prior Action, Icon refused to keep Northern informed about the status of the case and minimized or misstated Northern's involvement in the Commitment Letter in that lawsuit. (Compl., ¶¶ 29-30). Instead of answering the complaint, Boa sought to negotiate a resolution of the claims with both Icon and Northern. (Compl., ¶ 31). Without notice or warning, on July 11, 2011, Icon obtained judgment by default against Boa in the Prior Action. (Compl., ¶ 31). Boa then moved for relief from the default judgment. (Compl., ¶ 32).

Boa and Icon eventually reached a settlement of the Prior Action on January 19, 2012. (Compl., ¶ 34). It is Northern's understanding that Boa agreed to pay Icon $750,000 to settle the

Prior Action, which was more than Icon's 50% share of the contractual damages, and waived all rights to the earnest deposit money of approximately $300,000, which Icon had previously agreed to split with Northern. (Compl., ¶ 38). Northern contends that Icon was able to achieve this settlement by failing to advise the Court and the parties in the Prior Action of Northern's position and by actively misrepresenting Northern's involvement and rights under the Commitment Letter. (Compl., ¶¶ 36-37).

Icon has refused to share with Northern the settlement it received from Boa in the Prior Action. (Compl., ¶ 47). On May 7, 2012, Northern initiated the instant action against Icon and Boa.

Discussion

A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). While a complaint need not make "'detailed factual allegations,'" it must contain more than mere "'labels and conclusions' or []'formulaic recitation[s] of the elements of a cause of action.'" Id. (quoting Twombly, 550 U.S. at 555). A complaint with "'naked assertions' devoid of 'further factual enhancement'" is insufficient. Id. (quoting Twombly, 550 U.S. at 557). Further, where the complaint's factual allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard. Id. at

5

679.  In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

As noted above, in assessing a motion to dismiss under Rule 12(b)(6), a court must take as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 110-11 (2d Cir. 2010).  However, this is inapplicable to legal conclusion and a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F. 3d 136, 140 (2d Cir. 2002).  "'To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents . . . [and] [t]o be integral to the complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.'"  Bill Diodato Photography

LLC v. Avon Products, Inc., No. 12 Civ. 847, 2012 WL 4335164, at *3
(S.D.N.Y. Sept. 21, 2012) (alterations in original) (quoting DeLuca
v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)).
Both parties have presented the court with material outside the
pleadings relative to the merits of the plaintiff's claim.   Icon
has submitted (1) an affirmation of Justin Nastro, counsel for
Icon, annexing the complaint filed in the Prior Action and the
complaint filed in the instant action (Affirmation of Justin T.
Nastro dated June 26, 2012), and (2) a declaration of C. Tobias
Backer, managing director of Icon, with exhibits including a draft
of a Junior Term Loan Facility Agreement (the "Facility Agreement")
dated November 2010 and e-mail exchanges among the parties
(Declaration of C. Tobias Backer dated June 21, 2012).   Northern
has submitted a declaration of John Hartigan, senior investment
manager of Northern, with exhibits including an Information
Memorandum dated October 2010, a draft of the Facility Agreement
dated October 2010, and e-mail exchanges among the parties.
(Declaration of John Hartigan in Opposition to Defendant Icon
Capital Corp.'s Rule 12(b)(6) Partial Motion to Dismiss dated July
13, 2012).   These materials are referred to in the parties' brief.

     "[W]hen matters outside the pleadings are presented in
response to a 12(b)(6) motion, a district court must either exclude
the additional material and decide the motion on the complaint
alone or convert the motion to one for summary judgment under Fed.
R. Civ. P. 56 and afford all parties the opportunity to present
supporting material." Friedl v. City of New York, 210 F.3d 79, 83

(2d Cir. 2000) (alteration in original) (internal quotations marks omitted); see also Quick Cash of Westchester Avenue LLC v. Village of Port Chester, 11 Civ. 5608, 2013 WL 135216, at *3 (S.D.N.Y. Jan. 10, 2013) (quoting Friedl, 2010 F.3d at 93).  "A district court, however, 'is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a party seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." PNCEF, LLC v. Oz General Contracting Co., No. 11 CV 724, 2012 WL 4344538, at *3 (E.D.N.Y. Aug. 2, 2012) (quoting United States v. International Longshoremen's Association, 518 F. Supp. 2d 422, 450-51 (E.D.N.Y. 2007)).

I decline to convert this motion into one for summary judgment.  Therefore, with the exception of the Commitment Letter and the complaint in the Prior Action, which are incorporated by reference and are integral to the complaint, I exclude from consideration the additional materials submitted by the parties.

B.   Breach of Fiduciary Duty Claim

Under New York law,[1] the elements of a cause of action for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." Johnson v. Nextel Communications, Inc., 660 F.3d 131, 138 (2d Cir. 2011) (citing Barrett v. Freifeld, 64 A.D.3d

---

[1] The parties do not dispute that New York law governs the two claims at issue in Icon's motion.

8

736, 739, 884 N.Y.S.2d 305, 308 (2d Dep't 2009)); accord Muller-Paisner v. TIAA, ___ F. Supp. 2d ___, ___, 2012 WL 3205583, at *13 (S.D.N.Y. 2012) ("'The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" (quoting Armentano v. Paraco Gas Corp., 90 A.D.3d 683, 684, 935 N.Y.S.3d 304, 306 (2d Dep't 2011)).

Icon argues that the complaint fails to allege adequately that a fiduciary relationship existed between Icon and Northern (Defendant's Memorandum of Law in Support of Rule 12(b)(6) Partial Motion to Dismiss ("Def. Memo.") at 9-13), and that, in fact, no such relationship existed (Def. Memo. at 13-17). Necessarily, a predicate for breach of fiduciary duty is that a fiduciary relationship existed between the parties. Meisel v. Grunberg, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009).

Under New York law, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Krys v. Butt, 486 F. App'x 153, 154 (2d Cir. 2012) (alteration in original) (quoting EBC I, Inc. v. Goldman Sachs and Co., 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 175 (2005)). Moreover,

> [s]uch a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions. Generally, where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency. If the parties do not create their own relationship of higher trust,

courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them. Id. (quoting EBC I, Inc., 5 N.Y.3d at 19-20, 700 N.Y.S.2d at 175). "'At the heart of the fiduciary relationship lies reliance, and de facto control and dominance.'"   Id. (quoting United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991)).  "[W]hen parties deal at arm['s] length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, LLC, 355 F. App'x 516, 519 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted); see also Intellivision v. Microsoft Corp., 784 F. Supp. 2d 356, 372 (S.D.N.Y. 2011) ("Generally, commercial transactions do not create fiduciary obligations, absent express language in the contract or prolonged prior course of dealings between the parties establishing the fiduciary relationship." (internal quotation marks omitted)).

  1.  Joint Venture

First, the plaintiff contends that the complaint and the Commitment Letter set forth sufficient facts to allege a fiduciary relationship because Icon and Northern were joint venturers. (Plaintiff's Memorandum of Law in Opposition to Defendant Icon Capital Corp.'s Rule 12(b)(6) Partial Motion to Dismiss ("Pl. Memo.") at 7-9, 11-12).  "Under New York law, participants in a joint venture owe one another the same fiduciary duties that inhere between members of a partnership." Arqilus, LLC v. PNC Financial Services Group, Inc., 419 F. App'x 115, 119 (2d Cir. 2011) (citing

10

Stem v. Warren, 185 A.D. 832, 174 N.Y.S. 30 (1919)).  For a joint venture to exist, "[i]t is not enough that the parties have agreed to act in concert to achieve some stated economic objective." Abbas Corp. (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc., 820 F. Supp. 2d 549, 554 (S.D.N.Y. 2011) (internal quotation marks omitted).  Rather, to demonstrate the formation of a joint venture, a party must establish that

> (1) two or more persons [] enter[ed] into a specific agreement to carry on an enterprise; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge[,] or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

Learning Annex Holdings, LLC v. Whitney Education Group, Inc., 765 F. Supp. 2d 403, 411-12 (S.D.N.Y. 2011) (citing Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 67-68 (2d Cir. 2003)).  "[T]he absence of any one of these elements is fatal to the establishment of a joint venture."  Id. (footnote omitted) (internal quotation marks omitted).

Icon claims that the Commitment Letter contains no reference to a joint venture.  (Defendant Icon Capital Corp.'s Reply Memorandum of Law in Further Support of Its Partial Motion to Dismiss Pursuant to Rule 12(b)(6) ("Reply") at 8).  However, an express joint venture agreement is not required, and a joint venture may exist "'based upon the implied agreement evidenced by the parties conduct.'"  Sea Shipping Inc. v. Half Moon Shipping, LLC, 848 F. Supp. 2d 448, 458 (S.D.N.Y. 2012) (quoting Richbell Information Services, Inc. v. Jupiter Partners, LP, 309 A.D.2d 288,

11

297, 765 N.Y.S.2d 575, 583 (1st Dep't 2003)); <u>see also</u> <u>DIRECTV</u> <u>Group, Inc. v. Darlene Investments, LLC</u>, No. 05 Civ. 5819, 2006 WL 2773024, at *6 (S.D.N.Y. Sept. 27, 2006) ("[T]he term 'joint venture' need to be used in the parties' agreement to establish intent."). Nevertheless, "the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract." <u>Learning Annex Holdings, LLC.</u>, 765 F. Supp. 2d at 412 (footnote omitted) (internal quotation marks omitted).

Icon then argues that a joint venture was not established because the Commitment Letter contains no reference to the sharing of losses. (Reply Memo. at 9). "A provision to share profits and losses is 'indispensable' to the formation of a joint venture." <u>Abbas Corp. (PVT) Ltd.</u>, 820 F. Supp. 2d at 553 (quoting <u>Dinaco, Inc.</u>, 346 F.3d at 68); <u>see also</u> <u>Cosy Goose Hellas v. Cosy Goose USA, Ltd.</u>, 581 F. Supp. 2d 606, 622 (S.D.N.Y. 2008) ("[I]n order for an agreement to qualify as a joint venture, co-venturers must agree, either expressly or impliedly, to share liability for the possible obligations, debts, and losses of the joint venture itself."); <u>Buckmann v. State</u>, 64 A.D.3d 1137, 1137, 881 N.Y.S.2d 760, 762 (4th Dep't 2009) ("Indispens[a]ble to the creation of a joint venture is sharing in the profits and losses of the business." (alteration in original) (internal quotation marks omitted)). Northern contends that an agreement to share losses is not necessary because there was no reasonable expectation that there will be any losses, citing <u>Cobblah v. Katende</u>, 275 A.D.2d

637, 639, 713 N.Y.S.2d 723, 724 (1st Dep't 2000). (Pl. Memo. at 9 & n.4). However, Cosy Goose Hellas explains that this is a minority rule that has come "under heavy scrutiny and derision from judges of this Court for not being in accord with the elements of a joint venture under New York law." 581 F. Supp. 2d at 621 (holding no joint venture possible in absence of agreement to share in losses); see Ardis Health, LLC v. Nankivell, No. 11 Civ. 5013, 2012 WL 5290326, at *6 n.11 (S.D.N.Y. Oct. 23, 2012) ("[Plaintiff's] failure to allege an agreement to share losses belies any conclusion that the parties formed a joint venture.") (collecting cases).

> 2. Agency

Northern also claims that Icon's designation as the "agent" under the Commitment Letter gives rise to a fiduciary relationship. (Pl. Memo. at 9-11). "Under New York law, an agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" Steinbeck v. Steinbeck Heritage Foundation, 400 F. App'x 572, 575 (2d Cir. 2010) (quoting New York Marine and General Insurance Co. v. Tradeline (L.L.C.), 266 F. 3d 112, 122 (2d Cir. 2001)). An essential element of agency is a principal's ability to exercise control over its agent. Id.; see also In re Parmalat Securities Litigation, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005) ("The element of control often is deemed the essential characteristic of the principal-agent relationship." (footnote omitted)).

13

When an agency relationship is purported to be established by contract, "a court will look to the language of the agreement to ascertain the relationship created between the parties." Steinbeck, 400 F. App'x at 575.  However, labels are not dispositive, rather the facts and circumstances of the parties' relationship determines whether an agent-principal relationship existed. Onebeacon Insurance Co. v. Forman International, Ltd., No. 04 Civ. 2271, 2005 WL 100849, at *3 (S.D.N.Y. Jan. 19, 2005) (collecting cases).  "[O]ne does not become an agent through the mere utterance of that term.  Rather, a party claiming an agency relationship -- to which a fiduciary duty might apply -- must demonstrate that the alleged fiduciary 'occup[ied] a position of trust or special confidence with regard to [the plaintiff] that imposed obligations beyond the express agreements.'" TD Waterhouse Investor Services, Inc. v. Integrated Fund Services, Inc., No. 01 Civ. 8986, 2003 WL 42013, at *14 (S.D.N.Y. Jan. 6, 2003) (alterations in original) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

The plaintiff contends that although the Commitment Letter does not define "agent," it outlines the features of this position, which are consistent with the ordinary definition of agency. (Pl. Memo. at 10).  Specifically, it points to the responsibilities of Icon as an agent for conducting inspections of the collateral vessels, coordinating inter-creditor agreements between the lenders, requesting data from Boa, and collecting money from Boa on behalf of "the other parties to the [t]ransaction." (Pl. Memo. at

14

10).   Icon responds that the Commitment Letter contains no provision that it was required to undertake these acts "on behalf of" Northern.  (Reply Memo. at 11).

The Commitment Letter does not outline the relationship between Icon and Northern and, in fact, states that it is "issued for [Boa's] benefit only and no other person or entity may rely hereon" (Commitment Letter at 19).[2]  Critically, neither the complaint nor the Commitment Letter suggests that Northern had control over Icon as an agent.  See In re Parmalat Securities Litigation, 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("When the existence of an agency relationship is uncertain, the courts often look to control as a critical indicator." (footnote omitted) (internal quotation marks omitted)).  Accordingly, the plaintiff has not sufficiently alleged an agency relationship.  See Steinbeck, 400 F. App'x at 575-76 (holding no agency relationship existed when alleged principal had no control over alleged agent); Kyung Sup Ahn v. Rooney, Pace Inc., 624 F. Supp. 368, 370 (S.D.N.Y. 1985) ("The element of subservience is essential, for there can be no agency relationship where the alleged principal holds no right of control over the alleged agent.").

"Generally, no fiduciary duties arise where parties deal at arm's length in conventional business transactions."  Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC, 592 F. Supp. 2d 608, 624 (S.D.N.Y. 2009).  Neither

---

[2] The Commitment Letter is not paginated and citations to it will refer to the page numbers automatically assigned by the Civil Management Electronic Case Filing (CM/ECF) system.

15

the complaint nor the Commitment Letter suggests Northern and Icon were engaged in anything but an arm's length commercial transaction.  See Muller-Paisner, __ F. Supp. 2d at __, 2012 WL 3205583, at *12 ("[A] fiduciary relationship cannot exist where parties are involved in a mere arm's length-commercial transaction.").  The parties have not specifically agreed to enter into a fiduciary relationship.  See Pension Committee, 592 F. Supp. 2d at 624 (noting "a fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship."); Banque Arabe et Internationale D'Investissement v. Maryland National Bank, 819 F. Supp. 1282, 1296 (S.D.N.Y. 1993) ("[I]n the case of arm's length transactions between large financial institutions, no fiduciary duty exists unless one was created in the agreement." (internal quotation marks omitted)).  Moreover, there is no allegation that "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party," Pension Committee, 592 F. Supp. 2d at 624 (internal quotation marks omitted), that the relationship between the parties was one of "trust and confidence," Muller-Paisner, __ F. Supp. 2d at __, 202 WL 3205583, at *12 (noting "plaintiff may establish the existence of a fiduciary duty by presenting facts that establish that the relationship between the parties was more than a mere arm's length association and was one of trust and confidence."); King County, Washington v. IKB Deutsche Industriebank AG, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012)

16

("[T]here is no fiduciary duty unless the trust or confidence has been <u>accepted</u> as well."), or that any extraordinary circumstances existed, <u>Atlantis Information Technology, GmbH v. CA, Inc.</u>, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." (alteration in original) (internal quotation marks omitted)).    Accordingly, Northern has failed to allege a fiduciary relationship existed between Icon and Northern, an essential element to a breach of fiduciary duty claim, and therefore the plaintiff's fifth cause of action is dismissed.   <u>See</u> <u>Steinbeck</u>, 400 F. App'x at 575 (dismissing breach of fiduciary claim because plaintiff failed to establish existence of agency relationship); <u>Kidz Cloz, Inc. v. Officially for Kids, Inc.</u>, 320 F. Supp. 2d 164, 176 (S.D.N.Y. 2004) (dismissing breach of fiduciary duty claim because plaintiffs failed to establish existence of a partnership or joint venture).

3.   <u>Duplicative Claims</u>

Even if Northern were to have alleged a fiduciary duty, "[w]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and must be dismissed. <u>Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publishing Co.</u>, 580 F. Supp. 2d 285, 294-95 (S.D.N.Y. 2008); <u>see also Barbara v. MarineMax, Inc.</u>, No. 12 CV 368, 2012 WL 6025604, at *9 (E.D.N.Y. Dec. 4, 2012) ("If the breach of fiduciary duty claim

17

indeed arises from the duties imposed by the [contract], the claim is duplicative of the breach of contract claim, and is therefore subject to dismissal."); <u>Ellington Credit Fund, Ltd v. Select Portfolio Servicing, Inc.</u>, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." (internal brackets and quotation marks omitted)).

A breach of fiduciary duty claim is duplicative when it is "based on allegations of fiduciary wrongdoing that 'are []  expressly raised in plaintiff's breach of contract claim.'" <u>Balta v. Ayco Co.</u>, 626 F. Supp. 2d 347, 360 (W.D.N.Y. 2009) (quoting <u>Brooks v. Key Trust Co. National Association</u>, 26 A.D.3d 628, 630, 809 N.Y.S.2d 270, 272 (3d Dep't 2006)).   In other words, "a plaintiff may not maintain both a contract claim and a breach of fiduciary duty claim, without 'allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties.'" <u>Id.</u> at 360-61 (quoting <u>Brooks</u>, 26 A.D.3d at 630, 809 N.Y.S.2d at 272-73).

Northern contends that the fiduciary relationship is "not based solely upon the Commitment Letter" but also based upon "Northern and Icon's roles as co-venturers in negotiating, arranging, and furthering the Transaction." (Pl. Memo. at 15). The Commitment Letter, Northern argues, is just evidence of the parties intent to enter a joint venture.  (Pl. Memo. at 15).

18

However, the only basis upon which the complaint alleges that the parties maintained a fiduciary relationship, whether as co-venturers or with Icon as an agent, is from the language in the Commitment Letter.   (Compl., ¶¶ 50 ("Under the terms of the Commitment Letter, Icon and Northern were co-venturers."), 56 ("Icon and Northern were co-venturers through the Commitment Letter")).   Even if the complaint had alleged that a fiduciary duty arises from the "overall course of dealing between Northern and Icon with regards to providing the restructuring loan to Boa," (Pl. Memo. at 15), "a conclusory allegation that the parties developed a relationship of trust and confidence apart from their contractual relationship is insufficient to plead a fiduciary relationship and survive a motion to dismiss," <u>Barbara</u>, 2012 WL 6025604, at *11 (citation and internal quotation marks omitted).

Moreover, Northern's breach of fiduciary duty claim is identical in substance to the breach of contract claim and is therefore duplicative.   Both claims are premised upon the same facts and seek the same damages for the alleged conduct.   <u>E-Global Alliances, LLC v. Anderson</u>, No. 10 Civ. 2844, 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011) (dismissing breach of fiduciary duty claim when based upon same facts and seek same damages for same alleged conduct as breach of contract claim).   In the breach of contract claim, Northern alleges that "Icon violated the terms of the Commitment Letter contract" by "entering into settlement agreement with Boa" in the Prior Action "based upon entire amount due under Commitment Letter and not paying any of the settlement to

Northern" resulting in damages "in no event less than $569,753."
(Compl., ¶¶ 40-41 ).   In the breach of fiduciary duty claim,
Northern alleges that "Icon acted [] wrongly by entering into a
settlement agreement with Boa" in the Prior Action and "attempting
to claim all of the contractual damages payment for itself"
resulting in damages "in no event less than $569,753." (Compl., ¶¶
58-59).   Since the fiduciary duty claim is duplicative of the
breach of contract claim, even if the plaintiff had sufficiently
alleged a fiduciary relationship, this claim must be dismissed.

    C.   <u>Constructive Trust</u>

Under New York law, the elements of a constructive trust are:
"(1) a confidential or fiduciary relationship; (2) a promise,
express or implied; (3) a transfer made in reliance on that
promise; and (4) unjust enrichment."   <u>In re Ades and Berg Group
Investors</u>, 550 F.3d 240, 245 (2d Cir. 2008) (citing <u>Sharp v.
Kosmalski</u>, 40 N.Y.2d 119, 121, 386 N.Y.S.2d 72, 75 (1976)).   The
Second Circuit has noted that "[a]lthough these factors provide
important guideposts, the constructive trust doctrine is equitable
in nature and should not be rigidly limited." <u>Counihan v. Allstate
Insurance Co.</u>, 194 F.3d 357, 362 (2d Cir. 1999) (internal quotation
marks omitted).

The defendant seeks dismissal of this claim[3] because Northern
has failed to plead adequately a fiduciary relationship, a promise

_____

[3] Technically, constructive trust is "not a 'claim' in the
sense of an independent theory of liability, but rather a request
for a particular equitable remedy." <u>Berman v. Rotterman</u>, No. 10-
CV-1044A, 2011 WL 2149431, at *5 n.1 (W.D.N.Y. June 1, 2011).

made by Icon to act in any matter for Northern's benefit, and a transfer in reliance on that promise.   (Def. Memo. 19-20). However, in Golden Budha Corp. v. Canadian Land Co. of America, N.V., 931 F.2d 196, 202 (2d Cir. 1991), the Second Circuit held that the district court erred in concluding the complaint failed to plead a constructive trust even though the first three elements were lacking because the complaint alleged that the "defendants [held] property they should not retain in good conscience and equity, under the circumstances revealed."   This is because "[a] constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose," which is "to prevent unjust enrichment." Counihan, 194 F.3d at 361; see In re First Central Financial Corp., 377 F.3d 209, 212 (2d Cir. 2004) (noting the "fourth element is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'").   "Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain."   Counihan, 194 F.3d at 361. However, "[e]nrichment alone will not suffice to invoke the remedial powers of a court of equity."   101 McMurray, LLC v. Porter, No. 10 Civ. 9037, 2012 WL 997001, at *13 (S.D.N.Y. March 26, 2011) (quoting 1133 Taconic, LLC v. Lartrym Services, Inc., 85 A.D.3d 992, 993, 925  N.Y.S.2d 840, 840 (2d Dep't 2011)).

Northern contends that Icon has been unjustly enriched by entering into a settlement agreement with Boa in the Prior Action that resolved Boa's entire obligation under the Commitment Letter

despite Northern's rights under the Commitment Letter. (Compl., ¶¶ 53-54). This claim is duplicative of the breach of contract claim because it "arises from the same operative facts as [the] plaintiff[']s[] contract breach claim." Physician Mutual Insurance Co. v. Greystone Servicing Corp., No. 07 Civ. 10490, 2009 WL 855648, at *11 (S.D.N.Y. March 25, 2009) (dismissing constructive trust claim because it "arises from the same operative facts as plaintiffs' contract breach claim"); see also Pena v. Guzman, No. 03 Civ. 5130, 2004 WL 253331, at *2 (S.D.N.Y. Feb. 11, 2004) ("In order to establish a claim for constructive trust, the plaintiff must make an allegation that is not merely duplicative of the breach of contract claim but instead must allege . . . distinct harm or actions giving rise to a[] separate claim [for a] constructive trust." (alterations in original) (internal quotation marks omitted)). Both the breach of contract and constructive trust claims arise from the Icon's settlement with Boa in the Prior Action for the entire amount due under the Commitment Letter and Icon's refusal to share the settlement amount with Northern. (Compl., ¶¶40-41, 53-55).

Moreover, "New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." In re First Central Financial Corp., 377 F.3d at 215 (quoting Bertoni v. Catucci, 117 A.D.2d 892, 895, 498 N.Y.S.2d 902, 905 (1986)). Thus, "where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists," and a

constructive trust should not be imposed.  Id.  Northern has a contractual claim against Icon and there is no reason to believe that the legal remedy is inadequate in this case.  Accordingly, the defendant's motion as to the constructive trust claim is granted.

Conclusion

For the foregoing reasons, Icon's motion to dismiss counts IV and V of the complaint (Docket no. 11) is granted.


SO ORDERED.


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           January 24, 2013

Copies mailed this date:

Phillip R. Schatz, Esq.
Kristin Marlowe, Esq.
Wrobel & Schatz LLP
1040 Avenue of the Americas
11th Floor
New York, NY 10018

Thomas O. Johnston, Esq.
Porzio, Bromberg & Newman, P.C.
156 West 56th Street, Suite 803
New York, NY 10019

Michael D. Traub, Esq.
Akerman Senterfitt LLP
335 Madison Avenue
New York, NY 10017