UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NORTHERN SHIPPING FUNDS I, L.L.C., :      12 Civ. 3584 (JCF)
                                   :
          Plaintiff,               :      MEMORANDUM
                                   :      AND   ORDER
     - against -                   :
                                   :
ICON CAPITAL CORP., BOA SUB C AS,  :
BOA DEEP C AS, BOA HOLDING AS,     :
BOA OFFSHORE AS, and               :
TAUBATKOMPANIET AS,                :
                                   :
          Defendants.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Plaintiff Northern Shipping Funds I, LLC ("Northern") brings
this action against defendants Icon Capital Corporation ("Icon")
and Boa Sub C AS, Boa Deep C AS, Boa Holding AS, Boa Offshore AS,
and Taubåkompaniet AS (collectively, "Boa"), alleging breach of
contract, unjust enrichment, and money had and received; Boa
asserts cross-claims against Icon for fraud and breach of contract
and seeks rescission of a settlement agreement; and Icon cross-
claims against Boa for breach of contract.  Under Rule 56 of the
Federal Rules of Civil Procedure, Northern and Icon each move for
summary judgment against the other on Northern's contract, unjust
enrichment, and money had and received claims; Icon moves for
summary judgment on Boa's fraud and breach of contract cross-
claims; Icon and Boa each move for summary judgment against the

1

other on Icon's breach of contract cross-claim; and Boa moves for summary judgment on Northern's breach of contract claim. The parties have consented to my exercising jurisdiction over the action for all purposes, in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, Boa's and Icon's motions for summary judgment are granted in part and denied in part, and Northern's motion is denied.

<u>Factual Background</u>

The factual background of this dispute is set forth in the Local Rule 56.1 Statements of Undisputed Material Facts submitted by the parties,[1] their subsequent responses to these statements,[2]

---

[1] Icon Capital Corporation's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [Against] Plaintiff Northern Shipping Funds I, LLC ("Icon 56.1 Statement Northern"); Icon Capital Corporation's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment Against Defendant Boa Sub C AS, Boa Deep C AS, Boa Holding AS, Boa Offshore AS, and Taubãkompaniet AS ("Icon 56.1 Statement Boa"); Plaintiff's Rule 56.1 Statement in Support of Motion for Summary Judgment as Against Icon Capital Corp. ("Northern 56.1 Statement"); Boa's Local Rule 56.1 Statement of Undisputed Material Facts ("Boa 56.1 Statement").

[2] Icon Capital Corporation's Response to Plaintiff Northern Shipping Funds I, LLC's Rule 56.1 Statement ("Icon Response to Northern 56.1 Statement"); Icon Capital Corporation's Response to Defendants Boa Sub C AS, Boa Deep C AS, Boa Holding AS, Boa Offshore AS, and Taubãkompaniet AS [] Rule 56.1 Statement ("Icon Response to Boa 56.1 Statement"); Northern's Responses and Objections to Icon's Rule 56.1 Statement ("Northern Response to Icon 56.1 Statement"); Northern's Responses and Objections to Boa's Rule 56.1 Statement ("Northern Response to Boa 56.1 Statement"); Boa's Response to Icon Capital Corp.'s 56.1 Statement of Undisputed Material Facts ("Boa Response to Icon 56.1 Statement").

and documents included as exhibits to the motions. While the parties offer differing interpretations of the underlying facts and draw divergent inferences, most of the actual events, documents, and communications are undisputed. Disagreements over what actually happened are noted here and discussed later in further detail as necessary to adjudicate the motions.

A. <u>The Contract</u>

The Boa entities, based in Norway, provide "offshore services" such as "barge transportation, rig moves, coastal towages, and salvage operations." (Boa 56.1 Statement, ¶ 1). Northern is based in the Marshall Islands and is in the business of "[s]ourcing, arranging, structuring and funding transactions in the shipping and offshore oil services sectors." (Deposition of Sean Durkin dated Sept. 18, 2013, attached as Exh. 54 to Declaration of Thomas O. Johnston, Esq. dated Oct. 31, 2013 ("Johnston Decl."), at 16; Northern 56.1 Statement, ¶ 1). Icon is an "independent equipment leasing and financing company" working with entities in "a wide range of industries, including the maritime industry." (Icon 56.1 Statement Boa, ¶ 2). In January of 2010, Icon and Northern proposed an arrangement to provide Boa with refinancing of some of its outstanding loans. (Northern 56.1 Statement, ¶ 4; Icon 56.1 Statement Boa, ¶¶ 6-7). Neither was able to provide all of the necessary financing by itself. (Northern 56.1 Statement, ¶¶ 5-6;

3

Boa 56.1 Statement, ¶ 4).  From February to September of 2010, the three parties exchanged draft contracts setting forth the proposed terms of the deal.  (Icon 56.1 Statement Boa, ¶ 8; Northern 56.1 Statement, ¶ 7; Boa 56.1 Statement, ¶¶ 7-9).  Boa believed that Northern and Icon "had authority to act for [each] other with respect to the [contract]" during these negotiations.  (Boa 56.1 Statement, ¶ 11).

On September 16, 2010, Northern and Icon sent Boa a proposed contract (the "Commitment Letter" and "Term Sheet") under which Northern and Icon (acting jointly as the "Arrangers") would provide Boa with a $70,000,000 loan (the "Transaction").  (Commitment Letter, attached as Exh. A to Complaint; Term Sheet, attached as Exh. A to Commitment Letter).  These documents were drafted on paper that bore the logos of both Northern and Icon on the top of each page.  (Commitment Letter; Term Sheet; Northern 56.1 Statement, ¶ 23).  The Commitment Letter had spaces for C. Tobias Backer, the Senior Director of Icon, and John Hartigan, the Senior Investment Manager of Northern, to sign jointly "[o]n behalf of the Arrangers"; however, only Mr. Backer signed the letter. (Commitment Letter at 20; Northern 56.1 Statement, ¶¶ 21-33).[3]   Ole T.

---

[3] The pages of the Commitment Letter and Term Sheet are not numbered, so I refer to the page numbers on the Complaint filed in the Case Management/Electronic Case Filing (CM/ECF) system.

Bjornevik, Boa's Chairman, executed the contract by signing the Term Sheet on behalf of Boa on September 17, 2010. (Term Sheet at 30). The absence of Northern's signature on the Commitment Letter surfaced in later discussions regarding Northern's claims under the contract, and Boa asserted as an affirmative defense in this action that Northern's failure to execute means there is no privity of contract. (Boa's Answer, Defenses, and Cross-Claims at 9, ¶ 68). However, the parties now appear to agree that a binding contract existed between Boa and both Arrangers, Icon and Northern. (Northern 56.1 Statement, ¶¶ 8, 10, 27-33, 39-40, 42-47; Northern Response to Icon 56.1 Statement, ¶ 11; Boa 56.1 Statement, ¶ 12).

The Term Sheet provides details regarding the financing arrangement, Boa's payment obligations, the Arrangers' Fees, consequences of a default on the loan, and conditions precedent to the Transaction. (Term Sheet at 23-24, 28-29; Northern 56.1 Statement, ¶¶ 10-13, 20; Boa 56.1 Statement, ¶¶ 14-15). It also includes liquidated damages clauses in the event Boa was unable or unwilling to go forward with the Transaction. (Term Sheet at 23-24; Icon 56.1 Statement Northern, ¶ 14). Of the $70 million in financing, Icon was to provide $25 million and Northern was to provide $17.5 million of its own capital and $27.5 million from other investors. (Northern 56.1 Statement, ¶¶ 34-38). Upon the execution of the contract, Boa paid Icon a $300,000 deposit on the

Arrangers' fees to cover its expenses.  (Commitment Letter at 19;
Term Sheet at 23; Northern 56.1 Statement, ¶¶ 25, 52-53; Icon 56.1
Statement Northern, ¶¶ 15-16).

　　　The Commitment Letter states that it is "issued for [Boa's]
benefit only and no other person or entity may rely hereon."
(Commitment Letter at 19; Icon 56.1 Statement Northern, ¶ 18).  It
also "sets forth the entire agreement between the parties as to the
matters [] herein."  (Commitment Letter at 20).  Northern argues,
contrary to Icon's interpretation, that this language does not
apply to the relationship between Northern and Icon as co-
Arrangers, but rather to their relationship with Boa as the
borrower.  (Northern Response to Icon 56.1 Statement, ¶¶ 12-13).
The Commitment Letter does not contain any language with respect to
how the Arrangers would apportion the fees paid to them by Boa
(Term Sheet; Icon 56.1 Statement Northern, ¶ 21), and there are no
other final documents setting forth the relationship or obligations
between Northern and Icon as co-Arrangers (Icon 56.1 Statement
Northern, ¶¶ 18-19).

　　　B.　Breach of Contract and Demand

　　　On December 15, 2010, Boa unilaterally withdrew from the
Transaction, claiming that the refinancing had "proven to be more
complicated and [] taken [a] much longer time to conclude than we
all have anticipated."  (E-mail of Ole Bjornevik dated Dec. 15,

6

2010, attached as Exh. 7 to Johnston Decl.).  Boa alleges that it broke off the Transaction because the Arrangers were moving too slowly (Boa 56.1 Statement, ¶¶ 23-25), but Northern and Icon dispute this interpretation of the e-mail and claim that they were prepared to move forward with the Transaction at that time (Icon Response to Boa 56.1 Statement, ¶¶ 23-25; Northern Response to Boa 56.1 Statement, ¶¶ 23-25).

After Boa withdrew from the Transaction, representatives from Northern calculated the amount owed to the Arrangers as liquidated damages under the Term Sheet.  (Northern 56.1 Statement, ¶ 56).  On December 23, 2010, Mr. Backer of Icon sent an e-mail to Mr. Bjornevik of Boa, with a copy to Mr. Hartigan of Northern, demanding payment of "the fees, costs and expenses that are payable by you under the Commitment Letter in the case where the Borrower terminates the Transaction closing process." (E-mail of C. Tobias Backer dated Dec. 23, 2010 ("Backer 12/23/10 E-Mail"), attached as Exh. 8 to Johnston Decl.).  Northern asserts that this e-mail was sent "on behalf" of Northern and Icon as the Arrangers and represented a demand for the fees owed to both Arrangers.  (Northern 56.1 Statement, ¶¶ 59, 61-63).  Icon disputes that the e-mail was sent "on behalf of" Northern, noting that there was no reference to "'we,' 'Northern and Icon' or 'Northern' in the e-mail;" Icon also disagrees that the fees were owed to both

7

Arrangers, arguing that the Commitment Letter was "silent" as to who was entitled to the Arrangers' fees "in the event collection efforts [were] required." (Icon Response to Northern 56.1 Statement, ¶¶ 20, 49-50, 59-62). This disputed interpretation of the e-mail demand is part of a larger disagreement about whether Northern and Icon had ever discussed how they would split the fees from the Transaction, including those recovered in the event that Boa withdrew; Northern alleges that there was an oral agreement to split at least some of the fees equally, but Mr. Backer claimed that he did not recall such an oral agreement. (Icon Response to Northern 56.1 Statement, ¶ 76; Northern Response to Icon 56.1 Statement, ¶¶ 21-22). In any event, Mr. Backer admitted in deposition testimony that he sent the December 23, 2010 e-mail on behalf of both Arrangers, and that if Boa had paid the fees prior to litigation, Northern would have had a claim to at least some portion of the money collected. (Examination Before Trial of C. Tobias Backer dated Sept. 13, 2013 ("Backer Dep."), attached as Exh. B to Declaration of M. Darren Traub dated Nov. 1, 2013 ("Traub Decl."), at 159, 173, 237; Northern 56.1 Statement, ¶ 63; Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment Against Defendant Icon Capital Corp. ("Northern Reply") at 3-4).

In the December 23, 2010 e-mail, Icon and Northern claimed

that Boa owed $1,437,180.52 as a result of its breach of contract. This sum comprised two liquidated damages calculations set forth in the Term Sheet: one half of the "Arrangement Fee" of 1.5% of the $70 million loan amount, or $525,000, and one half of the "Upfront Fee" of 2% of the loan amount, or $700,000, along with the travel expenses of Icon and Northern representatives. (Backer 12/23/10 E-mail; Term Sheet at 23-24). The e-mail designates "ICON/Northern" as the "Counterpart" for these fees and expenses. (Backer 12/23/10 E-mail). The demand also covered fees apparently owed by the Arrangers to third parties for legal services, market studies, and vessel inspections done in preparation for closing the Transaction. For each of these expenses, the designated "Counterpart" appears to be the third party entity to which the fees were owed, rather than "ICON/Northern." (Backer 12/23/10 E-mail). Finally, the e-mail acknowledged Boa's prior payment to Icon of $299,985 as a deposit made on execution of the contract,[4] and thus demanded the remaining sum of $1,137,195.52 be paid to Icon's bank account by December 31, 2010. (Backer 12/23/10 E-mail).

Boa did not believe that this demand was an accurate description of the amount that it owed. It contended that "the

---

[4]  This represents the $300,000 deposit set forth in the Term Sheet, less a small wire transfer fee. (Boa 56.1 Statement, ¶ 21).

Arrangers' fail[ed] to timely arrange for the transaction," and thus breached the contract first, and also viewed the liquidated damages provision as unenforceable.  (Boa 56.1 Statement, ¶ 31; Deposition of Ole Bjornevik dated Sept. 20, 2013, attached as Exh. 56 to Johnston Decl., at 65).

    C.  <u>The Prior Action</u>

    After Boa failed to make the demanded payment, Mr. Hartigan and Mr. Backer exchanged a series of e-mails discussing potential legal action against Boa to enforce the liquidated damages provisions in the Term Sheet.  On January 6, 2011, Mr. Backer informed Mr. Hartigan that Icon had engaged counsel to work on a complaint and asked whether Northern would "split" the legal fees in the event Icon ultimately filed suit against Boa.  (Icon 56.1 Statement Northern, ¶ 29; E-mail of C. Tobias Backer dated Jan. 7, 2011, attached as part of Exh. 9 to Johnston Decl.).  On January 20, 2011, Icon informed Northern that it would indeed file an action against Boa and "offered Northern the opportunity to join in the lawsuit."  (Northern 56.1 Statement, ¶ 64).

    In an internal e-mail to John Durkin, the Director of Northern, Mr. Hartigan expressed concerns about the time, cost, and negative publicity that participation in a lawsuit against Boa would entail.  (E-mail of John Hartigan dated Jan. 7, 2011 ("Hartigan 1/7/11 E-mail"), attached as Exh. 9 to Johnston Decl.).

In a subsequent internal e-mail, Mr. Hartigan estimated that the "amount under dispute is approximately $1,137,195 of which [Northern] would be entitled to 50%" and that a lawsuit could cost as much as $150,000 if Boa refused to settle. (E-mail of John Hartigan dated Jan. 31, 2011, attached as Exh. 11 to Johnston Decl.; Icon 56.1 Statement Northern, ¶ 33)). At this time, Northern representatives were also concerned about Boa's finances and the possibility that it could go bankrupt. (Northern 56.1 Statement, ¶¶ 67-68).

In addition to these reservations, Northern also alleges that it was displeased with Icon's handling of the litigation. While Mr. Hartigan had some discussions with an Icon representative about the potential lawsuit (E-mail of John Hartigan dated Jan. 17, 2011, attached as Exh. 10 to Johnston Decl.), Northern claims that Icon would not give Northern "any information regarding selection of counsel or the substance of the litigation" (Northern 56.1 Statement, ¶ 65; Complaint, ¶ 25). Icon disputes this allegation, yet its own version of the facts -- that Northern "was aware of the counsel Icon selected for the prior action," that the parties discussed the lawsuit "in an in-person meeting in February 2011," and that Icon "notified Northern about the action's filing within days" -- suggests that Northern may have been shut out of the early stages of the lawsuit, including the selection of counsel and

11

drafting of the Complaint.   (Icon Response to Northern 56.1 Statement, ¶ 65).   Mr. Hartigan advised Mr. Backer in a February 8, 2011, e-mail that he would recommend Northern not join Icon's lawsuit and requested that Icon give Northern its portion of the remainder of the $300,000 deposit.  (E-mail of John Hartigan dated Feb. 8, 2011, attached as Exh. 12 to Johnston Decl.).  At the mid-February meeting the parties discussed "jointly send[ing] Boa a letter with a [draft complaint] attached" in the hopes of forcing a settlement, but this was not done.  (E-mail of John Hartigan dated Feb. 28, 2011 ("Hartigan 2/28/11 E-mail"), attached as Exh. 13 to Johnston Decl.; E-mail of Sean Durkin dated May 20, 2011 ("Durkin 5/20/11 E-mail"), attached as part of Exh. 23 to Johnston Decl.; Complaint, ¶ 26).  Ultimately, Northern did not join Icon's lawsuit, believing that it was better to "reach a negotiated settlement with Boa" before, rather than after, litigation commenced.  (Northern 56.1 Statement, ¶ 66).

On March 14, 2011, Icon filed its lawsuit against Boa to recover liquidated damages from the failed Transaction (the "Prior Action").   Icon Capital Corp. v. Boa Sub C AS, No. 11 Civ. 1746 (S.D.N.Y. March 14, 2011).  Northern was not a party to the Prior Action, and Icon made no reference to it in the Complaint. (Complaint in Prior Action, attached as Exh. 14 to Johnston Decl.). Icon demanded $1,111,100.68.  (Complaint in Prior Action at 10-11).

This is $26,094.84 less than the amount demanded in the December 23, 2010 e-mail, which coincides exactly with the amount attributed to "Northern T&E" (travel expenses) in the prior demand. (Backer 12/23/10 E-mail; Complaint in Prior Action, ¶ 22; Northern 56.1 Statement, ¶¶ 69-70, 76).   Indeed, Icon's explanation of its "contractually agreed-upon damage payments" includes every line item from the prior demand e-mail except for the expense "Northern T&E." (Complaint in Prior Action, ¶ 22).   Northern thus alleges that Icon demanded the same amount "for Icon's benefit alone" in the Prior Action as it had previously demanded "for the benefit of both Northern and Icon" in the December 23, 2010 e-mail. (Northern 56.1 Statement, ¶ 70 (emphasis omitted)).   Icon again disputes that the e-mail demand was "on behalf of" or for the benefit of Northern, and claims there is "no evidence" regarding how Icon "calculated the amount sought under the Commitment Letter" in its lawsuit.   (Icon Response to Northern 56.1 Statement, ¶ 70; Icon Response to Boa 56.1 Statement, ¶ 34).

D.   Dispute Between Icon and Northern Over the Prior Action

In late March, 2011, just a few weeks after the Prior Action was filed, Northern learned that Boa was looking at alternative sources for refinancing its debt. (Icon 56.1 Statement Northern, ¶ 40).   In an internal discussion at Northern, Mr. Durkin informed Mr. Hartigan that it would be "a good time to demand payment from

13

Boa" since Boa "can't raise cash if they are being sued"; Mr. Hartigan responded that Icon had already filed suit in its own name and without mentioning Northern, and expressed some regret that Northern told Icon it "did not want to be part of [the Prior Action]." (E-mails of John Hartigan and Sean Durkin dated March 25-28, 2011 ("Hartigan 3/25/11 E-mails"), attached as Exh. 17 to Johnston Decl.). But while Northern may have repeatedly told Icon it did not want to join in the Prior Action (Icon 56.1 Statement Northern, ¶ 38), and although Mr. Hartigan sent internal e-mails floating the idea that Northern might assign its claims to Icon (Icon 56.1 Statement Northern, ¶ 36; Hartigan 2/28/11 E-mail), Mr. Hartigan reassured Mr. Durkin that Northern had not signed anything waiving or assigning its claims or rights nor stated that it would forgo the opportunity to join Icon's lawsuit (Icon 56.1 Statement Boa, ¶ 35; Hartigan 3/25/11 E-mails). On April 1, Mr. Hartigan discussed Boa's potential new refinancing deal with Mr. Backer, and informed him that he now thought that Icon was "right to file that law suit." (E-mail of John Hartigan dated April 1, 2011, attached as part of Exh. 20 to Johnston Decl.).

A few months later, Mr. Hartigan proposed a meeting with Mr. Bjornevik to settle Northern's fee from Boa, although Mr. Durkin cautioned that a settlement should not be negotiated "without having Icon on board." (E-mail of Sean Durkin dated May 19, 2011,

attached as Exh. 22 to Johnston Decl.).  The next day, Mr. Durkin
e-mailed Mr. Backer and informed him of the planned meeting and
Northern's desire to settle with, not litigate against, Boa.
(Durkin 5/20/11 E-mail).  Mr. Durkin informed Mr. Backer that
Northern had not waived its rights to such a settlement, but that
it did not wish to block Icon's efforts to pursue claims against
Boa through litigation, as "Northern Shipping Funds owns a share of
the claims you are pursuing in the lawsuit."  (Durkin 5/20/11 E-
mail; Northern 56.1 Statement, ¶ 77; Icon 56.1 Statement Northern,
¶¶ 35, 49).  Mr. Backer replied that any settlement amount Boa paid
to Northern would be attributable to Icon's lawsuit, and expressed
disbelief that after Icon had previously offered Northern a chance
to split fees and any potential proceeds from the lawsuit, Northern
was only now claiming a role in the action after "ma[king] it clear
in both emails and conversations . . . that Northern had no
interest in participating in any lawsuit against Boa for
reputational reasons."  (E-mail of Tobias Backer dated May 24, 2011
("Backer 5/24/11 E-mail"), attached as Exh. 23 to Johnston Decl.;
Icon 56.1 Statement Northern, ¶ 51).  Mr. Backer rejected the
notion that Northern had "a right to share in Icon's claims,"
stating that this was "simply not the case" and arguing that "Icon
will not share any recovery it receives from Boa with Northern
Shipping as any claim will be legal in nature, not commercial."

(Backer 5/24/11 E-mail).  Mr. Backer concluded his response to Mr. Durkin's e-mail by stating that if Northern now wanted to pursue its share of the fees in light of Boa's "improved financial position," then Northern should "commence [its] own proceedings." (Backer 5/24/11 E-mail).

Representatives from Northern and Boa met on May 25, 2011.  At this meeting, Northern informed Boa that although it "could join" the Prior Action against Boa, that was "not what [Northern] wanted to do."  (Icon 56.1 Statement, ¶ 52; E-mail of John Hartigan dated May 25, 2011 ("Hartigan 5/25/11 E-mail"), attached as Exh. 24 to Johnston Decl.).  Boa apparently expressed a similar interest in settling the matter at this meeting, but wanted to speak to Mr. Backer at Icon; Mr. Hartigan said that Northern would speak to him first.  (Hartigan 5/25/11 E-mail).  A few days later, Mr. Hartigan once again informed Mr. Backer that Northern "would like to pursue a settlement with [Boa]" for the outstanding fees, as they had "not waived or otherwise transferred [Northern's] rights regarding [its] portion of the Boa fees."  (E-mail of John Hartigan dated May 31, 2011 ("Hartigan 5/31/11 E-mail"), attached as part of Exh. 27 to Johnston Decl.; Northern 56.1 Statement, ¶ 78).  However, Mr. Hartigan assured Mr. Backer that Northern's pursuit of a settlement with Boa "does not require [Icon to] withdraw[] the lawsuit." (Hartigan 5/31/11 E-mail).  In what appears to be Icon's final

16

communication to Northern on the issue, Mr. Backer responded that he was "disappointed" that Northern was now asserting an interest in a lawsuit it had previously declined to join; that the only reason Boa was considering a settlement with Northern was because of the Icon-financed lawsuit; that Icon would continue to pursue its claims and "any proceeds received from Boa as a result of this lawsuit will be retained by Icon"; and that Icon would not cooperate with Northern on future transactions because of the latter's "unscrupulous" behavior. (E-mail of C. Tobias Backer dated June 3, 2011, attached as Exh. 30 to Johnston Decl.; Icon 56.1 Statement Northern, ¶ 58).

Recognizing that Mr. Backer's response could put Northern and Icon on a "collision course" in their parallel pursuit of fees from Boa, Mr. Hartigan asked Mr. Bjornevik to contact Mr. Backer and affirm Boa's interest in settling the entire matter. (E-mail of John Hartigan dated June 4, 2011, attached as Exh. 31 to Johnston Decl.; E-mail of John Hartigan dated June 8, 2011, attached as Exh. 32 to Johnston Decl.). Mr. Bjornevik e-mailed Mr. Backer that Boa was "prepared to [] settle the fee (Upfront Fee and Arrangement fee) [that Boa owes] Icon/Northern," and copied Mr. Hartigan and Mr. Durkin. (E-mail of Ole Bjornevik dated June 10, 2011, attached as Exh. 33 to Johnston Decl.). Mr. Backer responded to Mr. Bjornevik's e-mail but did not copy the representatives from

17

Northern, and when Boa confirmed that it was prepared to pay the full amount demanded in the December 23, 2010 e-mail, Mr. Backer informed Mr. Bjornevik that such a payment "would be in consideration for withdrawing Icon's lawsuit." (E-mail of Tobias Backer dated June 16, 2011, attached as Exh. 1 to Northern Response to Icon 56.1 Statement).  Ultimately, however, Boa did not follow through on this professed willingness to pay Icon the demanded fees.  (Icon 56.1 Statement Northern, ¶ 65).

Having been left off Mr. Backer's reply to Mr. Bjornevik's e-mail, Mr. Durkin responded to Mr. Backer's June 3, 2011 e-mail one month later, reiterating that "[Northern] ha[d] not assigned the benefit of [its] claim" to Icon, that Northern had originally proposed non-litigation settlement strategies to resolve the dispute, that Boa's stronger financial status was responsible for Northern's renewed interest and Boa's willingness to settle, and that Icon had not given Northern any opportunity to provide input regarding the initiation of the Prior Action or retention of counsel.  (E-mail of Sean Durkin dated July 5, 2011 ("Durkin 7/5/11 E-mail"), attached as Exh. 34 to Johnston Decl.).  After this e-mail, it appears communications between Icon and Northern essentially ceased, but Northern periodically checked in with Boa on the status of Icon's lawsuit and "encourage[d] Boa to settle" with Icon.  (E-mail of John Hartigan dated Aug. 23, 2011, attached

18

as Exh. 36 to Johnston Decl.; E-mail of John Hartigan dated Oct. 6, 2011, attached as Exh. 38 to Johnston Decl.; Icon 56.1 Statement Northern, ¶¶ 67-68; Northern Response to Boa 56.1 Statement, ¶ 58). However, Northern never intervened in the Prior Action, apparently believing that Icon would "either settle for its half of the fees" or ask Northern for a release of its own claims. (Icon 56.1 Statement Northern, ¶¶ 70-71).

  E. <u>The Settlement Agreement</u>

  Icon moved for and obtained default judgment against Boa. (Default Judgment dated July 11, 2011). Boa moved to vacate the default judgment, citing improper service of process. (Memorandum of Law in Support of Defendants' Motion to Vacate Default Judgment dated July 27, 2011). At a hearing on the motion to vacate, the Honorable Leonard B. Sand, U.S.D.J., deferred a decision on the merits of the motion and instructed Icon and Boa to mediate the case. (Hearing Transcript dated Sept. 26, 2011, at 20-21; Boa 56.1 Statement, ¶¶ 38, 41). I presided over a settlement conference on December 9, 2011, and Icon and Boa entered into a settlement agreement effective January 1, 2012 (the "Settlement Agreement"), at which point the Prior Action was dismissed. (Icon 56.1 Statement Boa, ¶ 52; Stipulation of Discontinuance dated Jan. 23, 2012; Settlement Agreement, attached as Exh. 41 to Johnston Decl.). That agreement, the details of which were to remain confidential

(Settlement Agreement, ¶ 4; Icon 56.1 Statement Boa, ¶ 53), required Boa to pay $750,000 in damages to Icon –– an amount, Boa claims, that was based on the actual damages incurred rather than the liquidated damages clause that Boa contended was unenforceable (Boa 56.1 Statement, ¶ 44).

Prior to beginning settlement discussions, Boa asked Icon to clarify "whether Northern had –– or may assert in the future –– rights associated with the Commitment Letter," and expressed reservations about settling the Prior Action without Northern's "consent and participation." (Boa 56.1 Statement, ¶ 42). Boa also alleges that it asked Icon how a settlement could occur without Northern's participation as co-Arranger, to which Icon's counsel responded that "Northern Shipping declined to participate in the lawsuit because it recognized it did not sign the Commitment Letter and, thus, did not have any rights thereunder." (Boa 56.1 Statement, ¶¶ 39-40, 43; Boa Response to Icon 56.1 Statement, ¶ 49; Declaration of Ole T. Bjornevik dated Dec. 10, 2012, attached as Exh. A to Traub Decl., ¶ 11). Icon denies this allegation. (Icon Response to Boa 56.1 Statement, ¶¶ 39-40, 43). Northern argues that if Icon's former counsel did make such a statement, it was misleading, given repeated prior communications between Northern and Icon regarding Northern's claims and rights to a portion of the fees under the Commitment Letter notwithstanding the absence of Mr.

Hartigan's signature. (Northern Response to Boa 56.1 Statement, ¶ 40). Boa claims that it agreed to mediate the Prior Action based on these representations from Icon. (Boa 56.1 Statement, ¶ 41).

After agreeing on the settlement in principle, counsel for Icon and Boa began drafting the Settlement Agreement and had the following e-mail discussion regarding the implication of Northern's role in the Transaction on the settlement contract: (1) Icon's counsel crossed out draft language releasing Boa from any claims by Northern; (2) Boa's counsel replied that because Northern was "a party to the Commitment Letter, we need either a release from them or an agreement from Icon to indemnify Boa for any claim or loss that Northern Shipping may claim against [Boa]"; (3) Icon's counsel responded that Icon "cannot give Boa a release from Northern as it is an entirely independent entity," that "Northern is not a party to the litigation and is not signatory to the Commitment Letter and Term Sheet," and that Icon "cannot agree to indemnify Boa from a claim made by Northern for these reasons"; (4) Boa's counsel recalled that Icon had previously "indicated that Northern would not bring a litigation or sue" and asked for "elabora[tion] . . . so that I can give my client some comfort that they can settle with you and not worry about Northern coming after them for the rest"; (5) Icon's counsel addressed these concerns by proposing the following language, which was ultimately accepted by Boa's counsel

21

and included in the final agreement:

> Icon represents that, to the best of its knowledge, Northern
> Shipping Fund I LLC ("Northern") has not executed the
> Commitment Letter.   Icon further represents that it made
> Northern aware of its intention to file the subject lawsuit
> between Icon and Boa.   To the best of Icon's knowledge,
> Northern has not made nor does it intend to make a claim
> against Boa related to the Commitment Letter or this
> litigation.

(E-mail exchange between Justin Nastro and M. Darren Traub dated
Dec. 19-20, 2011 ("Nastro/Traub 12/19/11 E-mails"), attached as
Exh. 39 to Johnston Decl.; Settlement Agreement, ¶ 16; Boa 56.1
Statement, ¶¶ 42-43, 46-47; Icon 56.1 Statement Boa, ¶¶ 50-51, 56).
Boa claims that it signed the Settlement Agreement resolving the
Prior Action with Icon based on these representations, because it
reasonably believed that it was paying the "full amount . . . due
from Boa to the 'Arrangers' under the Commitment Letter, not just
to Icon" and that "the settlement resolved all disputes related to
the Commitment Letter that the Arrangers could assert." (Boa 56.1
Statement, ¶¶ 44-45, 48; Boa Response to Icon 56.1 Statement, ¶
54).   Icon disputes this characterization of events and the
reasonableness of Boa's understanding.  (Icon Response to Boa 56.1
Statement, ¶¶ 44-45, 48).

Boa further asserts that, prior to signing the Settlement
Agreement, it had no knowledge of the communications between
Northern and Icon in which Northern asserted rights to a portion of

Icon's claim. (Boa 56.1 Statement, ¶ 49). Northern argues that Icon should have informed Boa of those e-mails (Northern 56.1 Statement, ¶¶ 77-80), and that in light of this omission Icon's representations in the Settlement Agreement were "materially misleading, if not outright falsehoods" (Northern Response to Icon 56.1 Statement, ¶ 79; Complaint, ¶ 37). Icon claims that its representations are factually accurate and that, prior to the Settlement Agreement, Northern did not notify Icon in writing that it intended to file an action against Boa or appear in the pending litigation, nor inform Icon regarding "its position about consent rights." (Icon 56.1 Statement Boa, ¶ 57; Icon Response to Boa 56.1 Statement, ¶¶ 49-51; Northern Response to Icon 56.1 Statement, ¶ 73). Icon also contends that Northern and Boa had been in contact with each other, and that Northern had conveyed to Boa that it was not, nor did it want to be, a party to the lawsuit. (Icon Response to Northern 56.1 Statement, ¶ 79).

Around January 13, 2012, Mr. Hartigan spoke to Mr. Bjornevik, who informed him that Boa had settled the Prior Action with Icon and may also have informed him of the settlement amount. (Boa 56.1 Statement, ¶¶ 59-60; Icon 56.1 Statement Boa, ¶ 58; Boa Response to Icon 56.1 Statement, ¶ 58). Mr. Hartigan then spoke to Mr. Backer, who confirmed that the parties had settled and may also have confirmed the amount. (E-mail of John Hartigan dated Jan. 13,

2012, attached as Exh. 42 to Johnston Decl.; Boa 56.1 Statement, ¶¶ 61-62; Icon Response to Boa 56.1 Statement, ¶¶ 61-62; Northern Response to Boa 56.1 Statement, ¶¶ 61-62).  Northern subsequently sent a letter to Icon and Boa claiming that it was "the rightful owner of 50% of the interest in the Commitment Letter, the Judgment, and the Settlement Payment" and demanding half of the settlement amount, "reserv[ing] the right to bring a legal action . . . against both Icon and [Boa] to enforce its rights under the Commitment Letter."  (Boa 56.1 Statement, ¶¶ 63-66; Letter of Philip R. Schatz dated Jan. 25, 2012 ("Schatz 1/25/12 Letter"), attached as Exh. K to Traub Decl.).  Icon's counsel rejected the demand, noting that Northern had declined to participate in the Prior Action and never signed the Commitment Letter, and assuring Northern that Icon had not pleaded any right of Northern nor relinquished any claims on behalf of Northern. (Letter of Justin T. Nastro dated Jan. 31, 2012, attached as Exh. L to Traub Decl.; Boa 56.1 Statement, ¶ 67).  Counsel for Northern once again demanded that Icon pay Northern 50% of the settlement proceeds, and also demanded half of the remainder of the $300,000 deposit, or approximately $43,000, which Icon had agreed to give Northern after Boa withdrew from the Transaction.  (Letter of Philip R. Schatz dated March 13, 2012 ("Schatz 3/13/12 Letter"), attached as Exh. M to Traub Decl.; Northern 56.1 Statement, ¶¶ 54, 73; Boa 56.1

24

Statement, ¶¶ 68-69).  To date, Icon has not paid any of the money demanded by Northern.  (Northern 56.1 Statement, ¶ 73).

Procedural Posture

Northern initiated the present action against Icon and Boa on May 7, 2012, alleging that Icon did not own the exclusive rights to settle the case against Boa in the Prior Action and that Northern owned a portion of those claims.  Northern Shipping Funds I, LLC v. Icon Capital Corp., No. 12 Civ. 3584 (S.D.N.Y.).  Boa filed its answer on July 16, 2012, which included cross-claims against Icon for breach of contract and fraud.  (Boa's Answer, Defenses, and Cross-Claims).  I granted Icon's motion to dismiss Northern's constructive trust and breach of fiduciary duty claims on January 24, 2013.  Northern Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94 (S.D.N.Y. 2013).  Subsequently, Icon answered the Complaint and asserted two counterclaims against Northern and third-party claims against its officers, as well as three cross-claims against Boa; I dismissed the counterclaims, third-party claims, and two of the three cross-claims, but denied a motion to dismiss Icon's claim for breach of confidentiality against Boa. Northern Shipping Funds I, LLC v. Icon Capital Corp., No. 12 Civ. 3584, 2013 WL 1500333 (S.D.N.Y. April 12, 2013).

Discussion

    A.   Legal Standard

    Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A material fact is one that "'might affect the outcome of the suit under the governing law.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248).

    In assessing whether there is a genuine issue of material fact, a court must "construe the facts in the light most favorable to the non-moving party," Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003), and must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party," McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006). See also Irizarry v. Catsimatidis, 722 F.3d 99, 103 n.2 (2d Cir. 2013); Seeman v. Local 32B-32J, Service Employees Union, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011). "Where, as here, cross motions for

summary judgment are filed, [the Court] evaluate[s] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (internal quotation marks omitted); accord Versatile Housewares & Gardening Systems, Inc. v. Thill Logistics, Inc., 819 F. Supp. 2d 230, 236 (S.D.N.Y. 2011).

These inferences do not preclude the court from granting summary judgment when the factual assertions are insufficient to support a jury verdict. Anderson, 477 U.S. at 249-50 (citation omitted). Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment, Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)), but must "bring forward some affirmative indication that [their] version of relevant events is not fanciful," Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted). The court must therefore inquire into

whether the nonmoving party's claims are more than colorable or "significantly probative." Anderson, 477 U.S. at 249-50 (citation omitted).

However, it is not the court's role to resolve disputed issues of fact, as "choices between conflicting versions of the events are matters for the jury." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). "'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (emphasis omitted) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)); see also Katz v. Goodyear Tire and Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984) ("The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment." (internal quotation marks omitted)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, following which the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," Wrobel v. County of Erie,

692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting
Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475
U.S. 574, 586-87 (1986)).   The parties may support their claims
with discovery materials, stipulations, and affidavits, see Fed. R.
Civ. P. 56(c)(1)(A); however, "only admissible evidence need be
considered by the trial court in ruling on a motion for summary
judgment," Presbyterian Church of Sudan v. Talisman Energy, Inc.,
582 F. 3d 244, 264 (2d Cir. 2009) (internal quotation marks
omitted).

The parties agree that New York law governs the claims and
cross-claims at issue in their motions.   (Defendant Icon Capital
Corp.'s Memorandum of Law in Support of its Motion for Summary
Judgment Against Defendants Boa Sub C AS, Boa Deep C AS, Boa
Holdings AS, Boa Offshore, and Taubãkompaniet AS ("Icon Memo. Boa")
at 13; Defendant Icon Capital Corp.'s Memorandum of Law in Support
of its Motion for Summary Judgment Against Plaintiff Northern
Shipping Funds I, LLC ("Icon Memo. Northern") at 16; Memorandum of
Law in Support of Plaintiff's Motion for Summary Judgment Against
Icon Capital Corp. ("Northern Memo.") at 7; Memorandum of Law in
Support of Boa's Motion for Summary Judgment ("Boa Memo.") at 12-
13, 18-19); see also Northern Shipping Funds I, LLC v. Icon Capital
Corp., 921 F. Supp. at 101 n.1.

B.   <u>Boa's Cross-Claims Against Icon</u>

1.   <u>Boa's Fraud Claim</u>

Boa claims that Icon made misleading statements and omissions regarding the litigation position of Northern in order to induce Boa's settlement with Icon in the Prior Action.   (Memorandum of Law in Opposition to Defendant Icon Capital Corp.'s Motion for Summary Judgment Against the Boa Defendants ("Boa Opp. Memo.") at 20, 23-24).   Icon contends that the representations it made in the Settlement Agreement were true and that it clearly communicated to Boa that it could not release any claims by Northern.   (Icon Memo. Boa at 16-19).   Icon moves for summary judgment; Boa does not, although it does ask that the Settlement Agreement be rescinded "[i]f Northern's claims are found to be valid," based on the same allegations of misrepresentation by Icon that serve as the basis for its fraud claim.   (Boa Memo. at 22, 25).

Settlement agreements, like other contracts, may be rescinded for fraud or mutual mistake.   <u>See</u> <u>McDarren v. Marvel Entertainment Group, Inc.</u>, No. 94 Civ. 0919, 1994 WL 388994, *7 (S.D.N.Y. July 22, 1994); <u>Held v. Kaufman</u>, 91 N.Y.2d 425, 431 (1998).   To prevail on a claim for fraud in the inducement of a contract under New York law, Boa must show "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the

plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006); see also Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (describing intent to defraud as a misrepresentation "which the defendant made with the intention of inducing reliance"); Ross v. Louise Wise Services, Inc., 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 515 (2007). Contracting parties may also have a duty to disclose information where "the party has made a partial and ambiguous statement" because, "once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Sekisui America Corp. v. Hart, 12 Civ. 3479, 2012 WL 5039682, at *6 n.78 (S.D.N.Y. Oct. 17, 2012); Schwarz v. ThinkStrategy Capital Management LLC, No. 09 Civ. 9346, 2012 WL 2026365, at *14 (S.D.N.Y. May 31, 2012). A party must also disclose material facts where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Brass, 987 F.2d at 150 (internal quotation marks omitted). However, "a party cannot demonstrate justifiable reliance on representations that it knew were false," and New York courts view reliance claims by sophisticated parties with skepticism. Merrill Lynch & Co. v.

31

Allegheny Energy, Inc., 500 F.3d 171, 181-82 (2d Cir. 2007).

### a.  Icon's Motion

Because New York law imposes a heightened standard of proof for fraud, "the appropriate summary judgment question is whether the evidence on the record could support a reasonable jury finding that the [claimant] has shown each element" of a fraud claim "by clear and convincing evidence."  Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012).

### i.  Intentional Misrepresentation

To establish the first two elements of its fraud claim, the existence of a material misrepresentation or omission of fact made by Icon that it knew to be false, Boa points to Icon's Complaint in the Prior Action that "removed all references to Northern" and made it seem like Icon was the only party entitled to all of the fees; Icon's statements that Northern believed it lacked rights under the Commitment Letter because it had not signed the contract; and the language of the Settlement Agreement itself.  (Boa Memo. at 22).

Icon's Complaint in the Prior Action, and the conspicuous absence of Northern from its pleadings, should not have misled Boa, as Boa was privy to all of the events alleged in the Complaint. Perhaps Boa was confused as to why Northern was not also a plaintiff, but that confusion is the subject of the representations made by Icon in its later communications with Boa and in the

Settlement Agreement.  If anything, Icon's filings in the Prior Action made material misrepresentations to this Court, not to Boa.[5]

The communications between Boa and Icon prior to the signing of the Settlement Agreement suggest that Icon did not accurately convey Northern's litigation position.  (Nastro/Traub 12/19/11 E-

---

[5]  Under Rule 19(c) of the Federal Rules of Civil Procedure, a plaintiff must state in the complaint "(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." Fed. R. Civ. P. 19(c).  Requiring a party to plead this information protects non-joined parties and furthers the public's interest "in avoiding repeated lawsuits on the same essential subject matter." CP National Corp. v. Bonneville Power Administration, 928 F. 2d 905, 912 (9th Cir. 1991).  Northern was clearly a required party in the Prior Action, as it "claim[ed] an interest relating to the subject of the action and [was] so situated that disposing of the action in the [party's] absence may: (i) as a practical matter impair or impede the [party's] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double . . . obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).  Icon did not, however, plead this required information. (Complaint in Prior Action).  Of course, this is not a case where Icon was trying to hide a necessary party from Boa -- all parties knew of each others' existence and Northern's role in the Transaction, and Northern was aware of the litigation but did not want to participate.  See Greenwich Life Settlements, Inc. v. ViaSource Funding Group, LLC, 742 F. Supp. 2d 446, 457 (S.D.N.Y. 2010) (refusing to dismiss case under Rule 19(c) where litigant did not hide existence of necessary party from defendant).  But Northern's reluctance to join Icon's lawsuit does not absolve Icon of its failure to obey Rule 19; indeed, that Rule also provides that a party "who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." Fed. R. Civ. P. 19(a)(2).  Instead, Icon appears to have made a concerted effort to conceal Northern's identity and role in the matter from the Court.  (Complaint in Prior Action, ¶¶ 1, 15, 19; Declaration of C. Tobias Backer in Opposition to Defendant's Motion to Vacate the Default Judgment, ¶¶ 4, 6-8, 14, 22).

mails).  However, Icon disputes Boa's most significant allegation, that Icon's counsel told Boa that "Northern Shipping declined to participate in the lawsuit because it recognized it did not sign the Commitment Letter and, thus, did not have any rights thereunder."  (Boa 56.1 Statement, ¶¶ 39-40, 43; Icon Response to Boa 56.1 Statement, ¶¶ 39-40, 43).  Icon also argues that the integration clause in the Settlement Agreement precludes consideration of statements made during the contract negotiations. (Defendant Icon Capital Corporation's Reply Memorandum of Law in Support of its Motion for Summary Judgment Against Defendants Boa Sub C AS, Boa Deep C AS, Boa Holdings AS, Boa Offshore, and Taubãkompaniet AS ("Icon Reply Memo. Boa") at 10).  In any event, as explained below, that contractual language provides a sufficient basis for the misrepresentation element of Boa's fraud claim.

The first representation made by Icon in the Settlement Agreement was that Northern "ha[d] not executed the Commitment Letter."  (Settlement Agreement, ¶ 16; Boa Opp. Memo. at 23).  This is technically true.  (Commitment Letter at 20; Icon Memo. Boa at 17; Defendant Icon Capital Corporation's Memorandum of Law in Opposition to Defendants Boa Sub C AS, Boa Deep C AS, Boa Holdings AS, Boa Offshore, and Taubãkompaniet AS's Motion for Summary Judgment ("Icon Opp. Memo. Boa") at 6).  But that statement was not made in a vacuum.  Boa alleges that this assertion followed Icon's

prior assurance that Northern believed it was not a party to the contract, and thus could not enforce its right to fees, because it had not signed the Commitment Letter. (Boa 56.1 Statement, ¶¶ 39-40, 43; Boa Response to Icon 56.1 Statement, ¶ 49). And Icon knew that, at the very least, Northern was claiming it was entitled to a portion of the Arrangers' fees and asserting an interest in any settlement proceeds obtained by Icon, and that Icon itself had recommended Northern file its own lawsuit against Boa. (Northern Response to Boa 56.1 Statement, ¶ 40; Northern Response to Icon 56.1 Statement, ¶ 79). By stating that Northern had not executed the contract without providing any information regarding what it knew to be Northern's interest in the case, Icon's representation could be considered a "half-truth." Icon may have had a duty to disclose that both Arrangers were talking and acting as if Northern had grounds to raise a claim against Boa despite not having signed the Commitment Letter. (Hartigan 1/7/11 E-mail; Backer 5/24/11 E-mail). And a reasonable jury could thus find that Icon's representation as to Northern's execution of the contract was either false or materially incomplete. Brass, 987 F.2d at 150.

The other representation in the Settlement Agreement is Icon's assertion that "[t]o the best of Icon's knowledge, Northern has not made nor does it intend to make a claim against Boa related to the Commitment Letter or this litigation." (Settlement Agreement, ¶

35

16; Boa Memo. at 23-24).  Boa says this statement was "false at the time it was made." (Boa Memo. at 23).  Northern also alleges that Icon's representation of its litigation position was misleading. (Northern Response to Icon 56.1 Statement, ¶ 79).  Icon contends that it was not misleading because Northern had repeatedly stated "it did not want to litigate against Boa" and "disavow[ed] [] any intention to join the Prior Action."  (Icon Memo. Boa at 17-18; Icon Opp. Memo. Boa at 6-7).  But in so arguing, Icon carefully rephrases what the Settlement Agreement actually says -- that Northern had no <u>claims</u> against Boa under the Commitment Letter. Regardless of Northern's desire to litigate, Icon did have knowledge that Northern was asserting a claim to fees.  Months before the Settlement Agreement was signed, Northern informed Icon that it wanted to settle its claim against Boa and that it believed it had an interest or share in Icon's claims (Durkin 5/20/11 E-mail; Hartigan 5/31/11 E-mail; Durkin 7/5/11 E-mail), and Icon's response was to encourage Northern to bring its own lawsuit against

Boa (Backer 5/24/11 E-mail).[6]  Icon did not, however, convey any of this information to Boa.  (Boa Memo. at 23-24)

Icon's representations in the Settlement Agreement convey information in an incomplete and imprecise manner.  A reasonable jury could find that Icon knew that such representations were false when it made them or, even if they were technically true, that Icon omitted additional contextual facts that it had an obligation to disclose.  Boa has thus pled misrepresentation sufficiently to satisfy the first two elements of its claim.

### ii.  Intent

As to the third element of intent to induce, issues of contractual intent are generally not appropriate for determination at the summary judgment stage, particularly when the parties present conflicting evidence.  Bacchus Associates v. Hartford Fire Insurance Co., 766 F. Supp. 104, 111 (S.D.N.Y. 1991); see also Katz, 737 F.2d at 244 ("The district court should resist drawing fact inferences in summary judgment situations, particularly where . . . intent is at issue.").  Boa claims that it "made clear to

---

[6]   There also appears to be a dispute between Icon and Northern about whether Mr. Hartigan told Mr. Backer during a February, 2011 meeting that Northern had a claim to Boa's fees regardless of whether it joined Icon's lawsuit, though this point is raised only by Boa. (Boa Opp. Memo. at 21; Backer Dep. at 196-97; Deposition of John Hartigan dated Sept. 19, 2013, attached as Exh. J to Traub Decl., at 43-44).

Icon that it would not agree to mediate the Prior Action, much less settle with Icon, if Northern also had a claim under the Commitment Letter," and that Icon knew if it disclosed the information contained in its communications with Northern that Boa would have backed out of the settlement negotiations. (Boa Memo. at 22, 24; Boa Opp. Memo. at 23-24). Icon did not in fact reveal to Boa any of the communications it had with Northern regarding the latter's interest in the Prior Action, and at one point Mr. Backer omitted Northern representatives from an e-mail discussion with Mr. Bjornevik about the potential settlement. This supports a reasonable inference, based on Boa's interpretation of the facts, that Icon made false representations and omitted key facts in the Settlement Agreement with the intent of inducing Boa into signing it without Northern's participation.

### iii. <u>Reliance</u>

Boa faces the harder task of establishing that its reliance on Icon's false and incomplete statements was reasonable. Boa could have communicated with Northern to confirm its position in the Prior Action and "did not need Icon to explain Northern's rights." (Icon Memo. Boa at 18; Icon Opp. Memo. Boa at 5, 7). In fact, Northern and Boa <u>were</u> in communication, and Northern <u>had</u> conveyed to Boa its belief that it could have joined the Prior Action if it wanted to. (Icon Opp. Memo. Boa at 5-6; Hartigan 5/25/11 E-mail).

Under New York law, sophisticated business entities are expected to exercise more diligence in investigating representations made to them, and where a plaintiff has "access to critical information but fail[s] to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." Grumman Allied Industries v. Rohr Industries, Inc., 748 F.2d 729, 737 (2d Cir. 1984). A plaintiff may also have a duty to inquire if it had hints of the falsity of a defendant's representations. JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004). Boa arguably had access to critical information, as it could have asked Northern itself whether it had any claims under the Commitment Letter or any interest in the Prior Action, and Boa's prior communications with Northern may have provided sufficient warning that Icon's representations were not entirely accurate and should not have been relied upon.

Like questions of intent, however, "reasonable reliance is often a question of fact for the jury rather than a question of law for the court." STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC, 648 F.3d 68, 81 (2d Cir. 2011). Boa claims that it had no reason to question Icon or Northern about the representations because it was "not privy to any agreements or communications between Icon and Northern with respect to how the Arrangers' fee would be split between them." (Boa Memo. at 24).

Boa also points to prior instances in which Icon acted on Northern's behalf, including receipt of the $300,000 Arrangement Fee deposit and the December 23, 2010 e-mail demand. (Boa 56.1 Statement, ¶¶ 20-22, 27-29).

Boa has offered sufficient evidence from which a reasonable jury could infer that Icon made representations it knew to be false and omitted key facts from the language included in the Settlement Agreement, that it did so with the intent to induce Boa into signing that agreement, and that Boa was reasonable in relying on Icon's statements as to co-Arranger Northern's litigation position and would not have signed the contract (or paid as much as it did) had such misrepresentations not been made. Icon's motion for summary judgment on Boa's fraud cross-claim is therefore denied.

b.  Boa's Application

Considering Boa's request that the Settlement Agreement be rescinded as a motion for summary judgment on its fraud claim, the same issues that preclude summary judgment in favor of Icon -- the factual dispute over what Icon told Boa, whether Icon intended to induce Boa's reliance, and the reasonableness of Boa's reliance on Icon's representations -- also preclude judgment as a matter of law in favor of Boa. Boa's request that the Settlement Agreement be rescinded at this time is denied.

2.  Boa's Contract Claim

Icon also moves for summary judgment on Boa's breach of contract claim, which alleges that Icon's breach constituted "falsely representing and warranting to Boa" that Icon had full authority to execute the Settlement Agreement, that Northern did not have rights under the Commitment Letter, and that Northern did not intend to make a claim under the Commitment Letter. (Boa's Answer, Defenses, and Cross-Claims at 13, ¶ 17). However, Icon provides no argument in support of this motion other than its assertion that it did not make any misrepresentations to Boa. Because that issue is disputed, and because Icon raises no other arguments that it is entitled to judgment as a matter of law, its motion for summary judgment on Boa's breach of contract claim is denied.

C.  Icon's Cross-Claim Against Boa

Boa and Icon cross-move for summary judgment on Icon's cross-claim against Boa, which alleges that Boa breached the confidentiality clause of the Settlement Agreement by disclosing the amount Boa paid to Icon under that contract. (Icon's Answer to Complaint, Third Party Claims, Counterclaim, and Cross-Claims at 12-13, ¶¶ 9-14). Icon claims that Boa violated the confidentiality clause when Mr. Bjornevik disclosed the amount of the settlement agreement to Mr. Hartigan, an employee of Northern. According to

41

Icon, this breach led to Northern filing the current action and caused Icon to incur litigation costs to defend against Northern's claims. (Icon Memo. Boa at 1, 11, 13-15). Boa contends that Northern was technically a "party" to the settlement agreement because of its relationship with Icon and thus the disclosure to Mr. Hartigan was not a breach; that Icon confirmed the settlement amount and also breached the confidentiality clause; and that Icon's refusal to pay Northern <u>any</u> part of the settlement, not Boa's disclosure of the amount of the settlement, was the actual cause of Northern filing suit and Icon incurring legal costs,. (Boa Memo. at 16-17, 18-20).

    1.  <u>Icon's Motion</u>

In order to succeed on its motion for summary judgment for a breach of contract claim, Icon must show that the undisputed material facts establish the existence of a contract (in this case, a settlement agreement), Icon's performance under the contract, Boa's non-performance under the contract, and damages attributable to the breach. <u>Northern Shipping Funds</u>, 2013 WL 1500333, at *7; <u>see also Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.</u>, 495 F. App'x 112, 113 (2d Cir. 2012). The previous discussion of Boa's fraud claim against Icon, however, clearly establishes that there is a disputed material issue of fact underlying Icon's motion -- whether or not there was a valid

Settlement Agreement in the first place.  If Boa successfully
argues that Icon made material misrepresentations and fraudulently
induced Boa to sign the agreement, and the settlement is
consequently rescinded, then there would no longer be any contract
and no basis for Icon's breach of contract claim.  Icon's motion
for summary judgment on its cross-claim is therefore denied.

     2.  <u>Boa's Motion</u>

    For Boa to succeed on its cross-motion, it must demonstrate
either that Icon has failed to sufficiently establish the existence
of all four elements of a breach of contract claim, or that there
are no genuinely disputed material facts and it is entitled to
judgment as a matter of law.  I previously found that Icon
sufficiently pleaded the elements of a breach of contract claim to
survive the motion to dismiss stage, <u>Northern Shipping Funds</u>, 2013
WL 1500333, at *9, and Boa has failed to overcome the possibility
that a reasonable jury could weigh the evidence and return a
verdict in Icon's favor.

    First, Boa claims that when it discussed the Settlement
Agreement with Northern it "reasonably believed" it was
communicating with a party privy to the contract, because Northern
and Icon had an established pattern of acting jointly as one party
during the course of the Transaction.  (Boa Memo. at 16; Boa Opp.
Memo. at 11).  What Boa believed when it was settling the Prior

Action with Icon and whether it was reasonable is the subject of Boa's own cross-claim against Icon which, as noted above, is disputed and cannot be determined at this stage.   Furthermore, while the question of fact in the fraud claim is whether Icon misrepresented that Northern had no claim against Boa, here Boa alleges that it reasonably believed Icon was acting <u>on behalf of</u> Northern.   Given that Icon expressly informed Boa's counsel that it could not release claims on behalf of Northern because it was an "entirely independent entity," a jury could certainly find that Boa had no reasonable basis for believing that Icon was acting as an agent for both Arrangers.   (Icon Opp. Memo. Boa at 7-8).

Next, the parties appear to dispute whether Boa disclosed the amount of the settlement (Boa 56.1 Statement, ¶¶ 59-60; Icon 56.1 Statement Boa, ¶ 58; Boa Response to Icon 56.1 Statement, ¶ 58; Boa Memo. at 17-18; Boa Opp. Memo. at 12; Icon Memo. Boa at 14; Icon Opp. Memo. Boa at 9-10), and whether Icon also disclosed that information (Boa 56.1 Statement, ¶¶ 61-62; Icon Response to Boa 56.1 Statement, ¶¶ 61-62; Northern Response to Boa 56.1 Statement, ¶¶ 61-62; Boa Memo. at 17; Icon Opp. Memo. Boa at 9).   These facts are central to Boa's assertion that Boa did not breach the contract and Icon did. (Boa Memo. at 17-18).   A reasonable jury could credit Icon's version and find that Mr. Bjornevik disclosed the settlement

44

amount, that Mr. Backer did not, and that Boa thus breached the confidentiality agreement.

Boa claims that even if it did disclose the settlement amount, it was the <u>existence</u> of the settlement and Icon's unwillingness to share any of it with Northern, and not the disclosure of the <u>amount</u>, that prompted Northern to sue Icon; in other words, that the alleged breach was not the direct and proximate cause of Icon's legal fees. (Boa Memo. at 18-21; Boa Opp. Memo. at 13-16). As I noted when denying Boa's motion to dismiss this claim, Icon "present[ed] sufficient facts to suggest damages stemming from the alleged breach of the confidentiality provision." <u>Northern Shipping</u>, 2013 WL 1500333, at *9. And while each party now marshals additional evidence in its favor -- that Northern had previously been reluctant to litigate but rapidly changed course once it learned how much was at stake (Icon Opp. Memo. Boa at 10; Icon Reply Memo. Boa at 4-5), or that Northern never demanded a specific dollar amount of the settlement proceeds (Boa Memo. at 19-20) -- whether Boa's breach caused Icon's damages is a genuinely disputed issue of material fact. <u>See, e.g.</u>, <u>Raider v. Friedman</u>, 162 A.D.2d 112, 556 N.Y.S.2d 66, 67 (1st Dep't 1990) (noting that issue of proximate causation "involve[s] the kinds of judgmental variables which have traditionally, and soundly, been left to the finders of fact to resolve even where the facts are essentially

undisputed") (internal quotation marks omitted); <u>see also</u> <u>Golden</u>
<u>West Refining v. Pricewaterhouse</u>, 392 F. Supp. 2d 407, 413 (D.
Conn. 2005) (denying summary judgment motion because causation is
"paradigmatically factual issue"); <u>Seneca Meadows, Inc. v. ECI</u>
<u>Liquidating, Inc.</u>, 121 F. Supp. 2d 248, 257 (W.D.N.Y. 2000)
("'Questions of causation . . . involve quintessential issues of
fact.'" (quoting <u>Acushnet Co. v. Mohasco Corp.</u>, 191 F.3d 69, 79
(1st Cir. 1999)). A reasonable jury could infer from Northern's
actions that it only overcame its reluctance to litigate after Boa
disclosed the substantial sum of $750,000 at stake in the
Settlement Agreement, and that Boa thus caused Icon's legal defense
damages.

Next, Boa argues that Icon should be "equitably estopped" from
enforcing the confidentiality clause because it attempted to use
that term in the Settlement Agreement to deceptively "conceal the
fact it received money belonging to Northern." (Boa Memo. at 21-
22). Boa believes it should not have been "prevented from advising
Northern that Boa made payments to Icon in which Northern ha[d] an
interest." (Boa Memo. at 21-22). This argument merely repeats
Boa's other assertions regarding Icon's misrepresentations. It
also contradicts Boa's own argument that Northern sued Icon not
because it learned the amount of the settlement (which was subject
to the confidentiality clause), but because it learned that Icon

46

and Boa had settled (a matter of public record), and Icon refused to share any of the proceeds. (Boa Memo. at 17, 19-20). If that were true, as Boa alleges, then the confidentiality clause did not "shield" Icon from Northern's awareness that Icon had obtained at least some money from Boa in the settlement.

Finally, Boa argues that Icon's alleged damages -- legal fees incurred defending the present action against Northern -- are incidents of litigation and are not recoverable as a matter of law. (Boa Opp. Memo. at 16). Icon invokes an exception to the "American Rule" under which attorneys' fees and litigation expenses may be recoverable in a case "where a breach of contract has caused a party to maintain or defend a suit against a third person." (Icon Memo. Boa at 15-16 (quoting Artvale, Inc. v. Rugby Fabrics Corp., 232 F. Supp. 814, 826 (S.D.N.Y. 1964), aff'd 363 F.2d 1002 (2d Cir. 1966)).

Boa argues that the Artvale exception does not apply to the present case. First, it suggests that Artvale is limited to specific breach of contract claims, namely those involving a duty to defend or indemnify a lawsuit. (Boa Opp. Memo. at 17). Boa cites no authority to support this limitation, other than a pre-Artvale failure-to-defend case. (Boa Opp. Memo. at 17 (citing Doyle v. Allstate Insurance Co., 1 N.Y.2d 439, 154 N.Y.S.2d 10 (1956))). It attempts to contrast that case with two cases not

involving indemnity, but those cases both involved one party to a contract seeking litigation costs arising from an action against the other party to that contract, not a situation, like here, where a party to a contract sues the breaching party for litigation fees incurred defending a lawsuit brought by a third party attributable to the breach. (Boa Opp. Memo. at 17-18 (citing Versatile Housewares & Gardening Systems, Inc. v. Thill Logistics, Inc., 819 F. Supp. 2d 230, 241-46 (S.D.N.Y. 2011), and Kamfar v. New World Restaurant Group, Inc., 347 F. Supp. 2d 38, 51 (S.D.N.Y. 2004)). Neither Artvale nor subsequent cases have limited this exception to certain kinds of contract claims, and the language of the exception applies squarely to Icon's allegation that Boa's breach of contract caused it to defend a suit by Northern, an entity not party to the settlement contract. (Icon Opp. Memo. Boa at 9-10); see Ingersoll Milling Machinery Co. v. M/V Bodena, 829 F. 2d 293, 309 (2d Cir. 1987) ("Where a breach of contract has caused a party to maintain a suit against a third person, courts have permitted recovery from the breaching party of counsel fees and other litigation expenses incurred in the suit."); Versatile, 819 F. Supp. 2d at 241-42, 244 ("[F]ee recovery is unavailable unless a specific exception applies" such as "litigation against a third party from a defendant whose . . . breach of contract causes that litigation."); Travelers Casualty & Surety Co. v. Dormitory Authority - State of New York,

48

734 F. Supp. 2d 368, 386 (S.D.N.Y. 2010); <u>Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.</u>, 766 F. Supp. 138, 157-58 (S.D.N.Y. 1991); <u>In re Emergency Beacon Corp.</u>, 48 B.R. 341, 351 (S.D.N.Y. 1985) ("[A] successful litigant may recover legal expenses that are reasonably incurred where a breach of contract causes a plaintiff to maintain a suit against a third party.").

Second, Boa argues that <u>Artvale</u> does not apply to Northern's suit against Icon because "'the purported "third-party" wrongdoer is, either legally or as a practical matter, the same as the claimant's opponent in the main action.'" (Boa Opp. Memo. at 19 (emphasis omitted) (quoting <u>Versatile</u>, 819 F. Supp. 2d at 244)). Boa believes this limitation applies because Northern and Icon were acting, as a practical matter, as the same party during the Transaction. Notwithstanding that this assertion is itself a disputed material fact (Icon Opp. Memo. Boa at 7), Boa misunderstands and misapplies <u>Versatile</u>. In this case, the alleged third-party wrongdoer is, in fact, Boa. Icon, the claimant, alleges that Boa breached the confidentiality clause and caused Northern, the claimant's opponent in the main action, to bring a lawsuit against which Icon has to defend itself. Icon would be precluded from seeking its litigation expenses from Boa if Northern and Boa were legally or practically the same entities; such a situation would essentially be the same as Icon claiming litigation

expenses in a direct action against Boa for breach of contract, which is precluded by the general American Rule.  But that is not the case here, where the Artvale exception applies and Icon has properly pled litigation expenses and fees as damages under that exception.

Accordingly, Boa's cross-motion for summary judgment on Icon's breach of contract claim is denied.

D.   Northern's Claims Against Icon

Northern and Icon cross-move for summary judgment on Northern's claims for breach of contract, unjust enrichment, and money had and received.  Northern argues that Icon is contractually obligated to split the settlement proceeds it sought on behalf of both of the Arrangers, and that it would be inequitable to allow Icon to retain the full amount it received in settlement because it was obtained by demanding the entire amount of liquidated damages available under the Commitment Letter, some of which Northern was entitled to.  (Northern Memo. at 7-11).  Icon alleges that the Commitment Letter only outlined the obligations of Boa to the Arrangers and that no contractual language or relationship existed between Icon and Northern as to sharing damages sought in the event Boa breached; that Northern is free to pursue legal action against Boa and thus has not been damaged by Icon's settlement of its own claim; and that Northern's attempt to secure settlement proceeds

after avoiding the expenses and risks of litigation precludes a finding of unjust enrichment. (Icon Memo. Northern at 16-25).

    1.  <u>Northern's Motion</u>

Boa's pending fraud claim against Icon raises a genuinely disputed issue of material fact as to Northern's motion against Icon. While Icon's position is that the Settlement Agreement is valid but that Northern has not been damaged because it may still recover from Boa (Icon Memo. Northern at 22), Icon may ultimately be divested of its settlement proceeds as a result of Boa's cross-claim. If the Settlement Agreement is rescinded and Icon is forced to return that money, then Northern can no longer establish that Icon's actions are in breach of a contract it had with Northern or that Icon was enriched at Northern's expense through its Prior Action against Boa. Northern's claims would essentially become moot, as Icon would no longer have any settlement proceeds to share with Northern. (Complaint, ¶¶ 39-49 (alleging that Northern is entitled to 50% of Icon's recovery from Boa)). Northern's motion for summary judgment against Icon is therefore denied.

    2.  <u>Icon's Motion</u>

Icon's cross-motion is not dependent on Boa's fraud claim and warrants closer examination.

a.  <u>Breach of Contract</u>

Motions for summary judgment should be decided on the claims as pled, not as alleged in motion papers.  <u>Vetromile v. JPI Partners, LLC</u>, 706 F. Supp. 2d 442, 456 (S.D.N.Y. 2010).  "A party may not automatically raise a claim at summary judgment that he did not plead," though the Court "has discretion to adjudicate [an unpled] claim."  <u>Id.</u> (refusing to exercise such discretion because of lack of notice to defendant).  Here, Northern's pleadings relied exclusively on the Commitment Letter and Term Sheet to establish the existence of a contractual relationship between Northern and Icon.  (Complaint, ¶¶ 14-22, 39-41).  Northern did not assert that Icon breached any other implied or oral contracts, nor did it plead any facts demonstrating the existence of such agreements.  (Complaint, ¶¶ 2, 27, 39-41; Defendant Icon Capital Corporation's Memorandum of Law in Opposition to Plaintiff Northern Shipping Funds I, LLC's Motion for Summary Judgment ("Icon Opp. Memo. Northern") at 2).  I decline to exercise discretion to consider any implied or oral contracts and limit the breach of contract analysis to the Commitment Letter and Term Sheet.[7]

---

[7] Icon alleges that it "directed its discovery, including its questioning of Northern's witnesses at depositions, based on Northern's contract claim as plead[ed]" (Icon Opp. Memo. Northern at 4), and that "[i]f Northern had alleged a 'course of conduct' contract claim in its Complaint, Icon would have inquired much more into pre-Commitment Letter communications and documents" (Defendant

Icon argues that the Commitment Letter and Term Sheet do not establish a contractual relationship between Northern and Icon. The Term Sheet makes no reference to how fees would be distributed between the Arrangers after the Transaction closed or in the event of Boa's breach.  (Term Sheet; Icon Opp. Memo. Northern at 7; Northern Response to Icon 56.1 Statement, ¶ 21).  The Commitment Letter is "silent on obligations between Northern and Icon as arrangers," speaking only to their relationship with Boa as the borrower.  (Icon Memo. Northern at 17; Icon Opp. Memo. Northern at 2).  Northern admits that "[t]he purpose of the Commitment Letter was to define the relationship between Boa and the Arrangers, not to define the relationship between the Arrangers themselves." (Northern Response to Icon 56.1 Statement, ¶¶ 12-13; Northern Memo. at 8).  "The plain fact is that the Term Sheet does not define the relationship of the Arrangers inter se, and that there is no formal written agreement that does so."  (Memorandum of Law in Opposition to Icon and Boa's Motions for Summary Judgment ("Northern Opp. Memo.") at 7).  No other documents set forth the relationship between Northern and Icon as co-Arrangers or their obligations to each other regarding the fees, with the exception of an e-mail

---

Icon Capital Corporation's Reply Memorandum of Law in Support of its Motion for Summary Judgment Against Plaintiff Northern Shipping Funds I, LLC ("Icon Reply Memo. Northern") at 4).

exchange in which the parties affirmed an agreement to split the remainder of the Arrangement Fee deposit paid by Boa to Icon at the time the contract was signed.   (Northern Response to Icon 56.1 Statement, ¶¶ 18-19; Backer 5/24/11 E-mail; Northern Opp. Memo. at 7).

Despite the clear purpose of the Commitment Letter and Term Sheet, Northern argues that the Term Sheet nevertheless "constitutes a valid binding contract between Northern, Icon, and Boa," and that, because fees were to be paid "to the Arrangers," Icon breached the contract "by retaining the full settlement payment from Boa."   (Northern Memo. at 7).   Northern urges the Court to supply a term that the co-Arrangers "are required to equally divide the fees paid by Boa."   (Northern Memo. at 8). Northern points to a course of conduct between the co-Arrangers as evidence that "[t]he parties most certainly understood how the Arrangement Fee and Upfront Fee would be distributed" and that the "conduct of the parties demonstrates [their] intention to share the fees [equally]." (Northern Opp. Memo. at 6; Northern Memo. at 9). For example, Northern and Icon explicitly agreed to split the remainder of the deposit portion of the Arrangement Fee; Icon made the original e-mail demand of Boa on behalf of both Arrangers; Icon proposed to "split" the legal fees in the Prior Action with Northern; Icon and Northern contributed equally in preparing for

the Transaction and were to perform similarly under the contract; and the Term Sheet views the Arrangers interchangeably. (Northern Opp. Memo. at 6-8; Northern Memo. at 8). Northern also argues, through the deposition testimony of Mr. Durkin, that there was an oral agreement to split the Arrangement Fee evenly. (Northern Response to Icon 56.1 Statement, ¶¶ 21-22; Northern Opp. Memo. at 7). Icon denies any oral agreement existed, and Mr. Backer does not recall such a conversation. (Icon Response to Northern 56.1 Statement, ¶ 75; Icon Opp. Memo. Northern at 6). Icon also disputes the course-of-conduct evidence and argues that there was never a meeting of the minds on fee distribution. (Icon Memo. Northern at 16-17; Icon Opp. Memo. Northern at 4, 6-7, 10-12).

The conduct of Northern and Icon suggests an understanding that some splitting of fees would occur, and supports Northern's contention that it would be a "logical fallacy that Icon and Northern [could] each have overlapping claims against Boa but no obligations or duties toward each other." (Northern Reply at 9). But Northern's reliance on the Commitment Letter is misplaced. Northern fails to point to a specific contractual term or obligation to Northern that Icon allegedly violated. The Term Sheet states that fees would be paid "to the Arrangers" (Term Sheet at 23-24), including Northern, but that is a contractual obligation that runs to Boa, not Icon. The Commitment Letter also provides

that the Arrangers may allocate the fees to certain "affiliates" of their choosing, or may even "assign all or any portion of its commitments hereunder to one or more of its affiliates." (Commitment Letter at 19). Such assignments and other arrangements, including fee distribution as between Northern and Icon, are not dealt with anywhere in the Commitment Letter or Term Sheet -- they would presumably be handled in other contracts defining the relationships of the arranging and lending parties.

What Northern requests is not for the Court to supply a missing term, but a missing contract. The Commitment Letter and Term Sheet do not constitute a contract between Northern and Icon to share fees from the Transaction, let alone to share settlement proceeds. (Icon Opp. Memo. Northern at 10). Though a contract between the Arrangers may be implied by the structure of the Transaction, it is not embodied in the Commitment Letter, and any attempt to insert terms pertaining to the relationship of Northern and Icon into a contract that defines only the relationship between the Arrangers (collectively) and Boa is inappropriate. There is astonishingly little evidence that Northern and Icon even tried to formalize an agreement as to the sharing of fees from the Transaction; the Court will not step in at this stage and do what the parties themselves failed to do. Icon's motion for summary

judgment on Northern's breach of contract claim is therefore granted.[8]

> b. Unjust Enrichment

To succeed on its claim of unjust enrichment, Northern must establish that Icon was enriched, at Northern's expense, and that it is "against equity and good conscience to permit [Icon] to retain what is sought to be recovered." (Icon Memo. Northern at 20 (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 473 (2011))).[9] "[A] claim for unjust enrichment

---

[8] Northern also alleges that the Prior Action itself was a breach -- that Icon, "[b]y bringing suit for the full amount owed by Boa under the Term Sheet, including amounts that were owed to Northern . . . violated the terms of the Term Sheet, and the covenant of good faith and fair dealing." (Northern Memo. at 9). Having already decided that the Term Sheet did not contain any obligations between Northern and Icon, I will consider the good faith and fair dealing arguments in the context of Northern's claim of unjust enrichment.

[9] Icon asserts in a footnote that the money had and received claim "is apparently an equitable claim duplicative of [Northern's] unjust enrichment claim." (Icon Memo. Northern at 25, n.3). Indeed, this claim is similar, but not identical to, an unjust enrichment claim, requiring Northern to show that Icon received money belonging to Northern, that Icon benefitted from receiving that money, and that the principles of equity and good conscience require the defendant to give up some of that money. (Northern Memo. at 10 (citing McKinley Associates, LLC v. McKesson HBOC, Inc., 110 F. Supp. 2d 169, 190 (W.D.N.Y. 2000)).

However, even when the claims are "based on the same factual allegations" they are not necessarily duplicative. Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, 03 Civ. 15, 2007 WL 1687044, at *10 (S.D.N.Y. June 11, 2007); see also Onanuga v. Pfizer, Inc., 03 Civ. 5405, 2004 WL 601689, at *3 (S.D.N.Y. March 16, 2004) (denying motions to dismiss unjust enrichment and money

will lie only where the defendant possesses money or received a benefit which in equity and good conscience the defendant should not retain because it belongs to the plaintiff." Sobel v. Eggleston, No. 12 Civ. 2551, 2013 WL 1344712, at *5 (S.D.N.Y. March 28, 2013) (emphasis omitted) (internal quotation marks omitted); see also Gameologist Group, LLC v. Scientific Games International, Inc., 838 F. Supp. 2d 141, 167 (S.D.N.Y. 2011), aff'd, 508 F. App'x 31 (2d Cir. 2013) (denying unjust enrichment where no evidence that plaintiff provided "anything of value to the defendants or that the defendants accepted services from the plaintiff"); In re JMK Construction Group, Ltd., 502 B.R. 396, 415 (Bankr. S.D.N.Y. 2013) (essence of unjust enrichment claim is that one party received money or a benefit that belonged to another); Goel v. Ramachandran, 111 A.D.3d 783, 791-92, 975 N.Y.S.2d 428, 437-38 (2d Dep't 2013) (dismissing unjust enrichment claim where no evidence that allowing defendant to maintain received benefits was unjust); Zamor v. L & L Associates Holding Corp., 85 A.D.3d 1154, 1156-57, 926 N.Y.S.2d 625, 628 (2d Dep't 2011) (requiring a "benefit [that] has been conferred on the defendant  . . . [and] still remains with the

_____

had and received claims premised on the same damages).  In any event, because Icon has failed to provide any substantiation for its assertion that the claims are duplicative, I will not consider whether Icon is entitled to summary judgment on Northern's money had and received claim.

defendant"); Clifford R. Gray, Inc. v. LeChase Construction
Services, LLC, 31 A.D.3d 983, 988, 819 N.Y.S.2d 182, 187 (3d Dep't
2006) (denying unjust enrichment claim based on "conclusory
allegations that defendant benefitted from plaintiff's [actions]"
where no evidence suggested "that defendant is in possession of
money or property belonging to plaintiff").

Icon was clearly enriched.  It received $750,000 in the
Settlement Agreement with Boa, or roughly 68% of the amount it
initially demanded in the Prior Action.  (Settlement Agreement at
1; Complaint in Prior Action, ¶ 22).  Whether that enrichment came
at Northern's expense or as a result of Northern conferring a
benefit on Icon is disputed.

Northern alleges that Icon "limited Northern's ability to
enforce its own rights under the [Commitment Letter]" by claiming
the full amount of liquidated damages in the Prior Action.
(Northern Opp. Memo. at 9-10).  This is not true as a legal matter,
since the Settlement Agreement does not release Northern's claims
nor prevent Northern from bringing its own suit against Boa.  (Icon
Memo. Northern at 21-23).  Nor does Icon's settlement with Boa
limit the amount Northern might collect in its own lawsuit.  The
Settlement Agreement is an independent contract in which Boa paid
Icon a sum in consideration for release from the Prior Action.
(Settlement Agreement at 1).  Whether that sum is attributable to

all of the damages claimed or to half of the damages plus
attorneys' fees, or perhaps to something entirely unrelated to the
damages provision such as Boa's desire to avoid the negative
publicity of a lawsuit or to dispense with the litigation in order
to pursue refinancing opportunities, the Settlement Agreement is
not a final judgment and has no collateral estoppel or res judicata
effect.  See People ex rel. Spitzer v. Applied Card Systems, Inc.,
11 N.Y.3d 105, 122, 863 N.Y.S.2d 615, 626 (2008) (res judicata
applies only if "there is a judgment on the merits rendered by a
court"); see also Americorp Financial, LLC v. Venkany, Inc., 102
A.D.3d 516, 516, 958 N.Y.S. 2d 354, 355 (1st Dep't 2013)
(collateral estoppel does not apply to settlement stipulations).
Thus, the settlement of Icon's claim places no legal limits on what
Northern might recover.

That Northern is free to pursue a claim against Boa does not
necessarily mean that Icon's settlement did not enrich Icon at
Northern's expense, however.  Unjust enrichment claims are not
limited to tangible monetary enrichment, but also include the
receipt of an intangible benefit at the expense of another.  See,
e.g., Fidelity & Deposit Co. of Maryland v. Smith, 730 F.2d 1026,
1033 & n.7 (5th Cir. 1984) (accepting claims for intangible
enrichment and directing District Court to consider whether
defendant was unjustly enriched by "benefit[ing] his client

(thereby maintaining the good will of his client) to the detriment of his employer"); <u>Edison Motor Sales, LLC v. Dibre Auto Group, LLC</u>, No. 12-CV-239, 2012 WL 5199764, at *8 (D.N.J. Oct. 19, 2012) (accepting plaintiffs' pleading of enrichment from "intangible good will"); <u>Security & Exchange Commission v. Yun</u>, 148 F. Supp. 2d 1287, 1291-92 (M.D. Fla. 2001) (discussing unjust enrichment in context of disgorgement of benefit from violation of securities law where defendant "received no tangible, monetary benefit" from her actions but rather "an intangible benefit" such as "improved networking contacts"); <u>ABT Associates, Inc. v. JHPIEGO Corp.</u>, 104 F. Supp. 2d 523, 535-36 (D. Md. 2000), <u>aff'd</u> 9 F. App'x 172 (4th Cir. 2001) (dismissing claim of unjust enrichment where intangible nature of alleged benefit could not be assigned monetary value); <u>Thomas v. McLaughlin</u>, 276 A.D.2d 440, 440, 715 N.Y.S.2d 388, 389 (1st Dep't 2000) (dismissing unjust enrichment claim where "plaintiff's testimony did not substantiate her assertion that [the defendant] was unjustly enriched by receiving an 'intangible benefit'").

Here, Icon acquired an intangible benefit by asserting a claim against Boa that included, at least in part, damages that were rightfully owed to Northern. Taking the facts in the light most favorable to Northern, Icon sent Boa an e-mail on December 23, 2010, demanding on behalf of both itself and Northern the full

amount owed under the liquidated damages provision, or roughly $1.1 million.  (Backer 12/23/10 E-mail).  Icon then invited Northern to join the lawsuit, implicitly recognizing that Northern also had a claim under the Commitment Letter to a portion of Boa's recovery.[10] (Northern 56.1 Statement, ¶ 64).  When Northern declined to join, Icon initiated the Prior Action.  However, Icon claimed an amount virtually identical to what it had previously demanded for the benefit of both Northern and Icon, indeed, a sum reduced only by Northern's travel expenses.  (Northern Memo. at 10; Northern 56.1

---

[10]   Icon attempts to distinguish any agreement with Northern regarding fee-sharing from what it alleges was a complete lack of agreement as to recovery of the fees as liquidated damages "in the event collection efforts [were] required."  (Icon Response to Northern 56.1 Statement, ¶¶ 49-50; Icon Memo. Northern at 18 (alleging there was no "meeting of the minds on the sharing and collection of the [damages fees]"); Icon Opp. Memo. Northern at 6, 12 ("[T]he parties did not intend to grant Northern a right to half of any litigation settlement proceeds at the time of the formation of the Commitment Letter."); Icon Reply Memo. Northern at 2 ("[T]he Commitment Letter did not provide a means to determine how Icon and Northern intended to share the [liquidated damages] or allocate responsibilities to collect the [damages].")).  This distinction fails for two reasons.  First, it is implausible that parties who have agreed to a division of proceeds from a transaction would abandon that allocation and resort to a "free for all" in the event that collection efforts were necessary to secure the proceeds.  Second, drawing inferences in Northern's favor, Icon admitted through words and actions that Northern would have been entitled not only to some of the fees had the Transaction closed or had the parties settled, but also to a portion of the recovery had Northern joined the Prior Action.  (Northern Memo. at 10; Northern Opp. Memo. at 6).

Statement, ¶¶ 69-70, 76; Northern Opp. Memo. at 9).[11]  Northern and Icon may not have reached an agreement on how they would split the recovery between them, but the amount demanded in both the e-mail and the Complaint represents the total amount that Icon and Northern believed they were collectively owed as Arrangers under the Term Sheet's liquidated damages provision.  Yet Icon filed the Prior Action on its own, pursuing the entire liquidated damages amount allegedly owed to the Arrangers, including Northern's portion of that claim, without joining or pleading Northern as a party under Rule 19 to ensure that Northern's interest would be represented.

By asserting entitlement not only to its own share, but also to Northern's share, of any recovery from Boa, Icon gained leverage in its lawsuit against Boa.  See Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) ("[T]he combination of extracting highly valuable leverage (in a misleading manner) and then avoiding payment in accordance

---

[11]  Icon alleges that this demand in the Prior Complaint included lost interest and attorneys' fees and was not calculated by merely subtracting Northern's travel expenses.  (Icon Reply Northern at 6).  That assertion is undermined by the break-down of damages that Icon pleaded. (Complaint in Prior Action, ¶ 22).  In any event, drawing inferences in the favor of non-moving party Northern, a jury could reasonably find that Icon's litigation demand was the same as the e-mail demand less Northern's travel costs.

with prior promises was unscrupulous and dishonest . . . [and] within the penumbra of common-law unjust enrichment."). That leverage was enhanced when Icon obtained a default for the full amount demanded and then used the prospect of collecting on the judgment to negotiate a settlement with Boa while Boa's motion to vacate the default was pending.[12]

The injustice of Icon's usurpation of Northern's claim is not negated by the fact that Northern can still sue Boa. First, as a practical matter, Boa's enthusiasm for settling with Northern, and perhaps even its financial ability to do so, is necessarily diminished by its already having paid a substantial sum to Icon for what it purportedly understood to be a resolution of Northern's claim as well. Second, Northern's claim now is no longer as valuable as when Icon used it to its own advantage: as will be discussed below, Northern cannot recover the liquidated damages that were the centerpiece of the Arrangers' original demand and Icon's lawsuit. Because Icon relied on Northern's rights under the Commitment Letter to strengthen its own settlement position and the value of Northern's claim was diminished as a result, a reasonable jury could find that Icon was enriched at Northern's expense.

---

[12] Indeed, had Icon collected the default judgment instead of settling with Boa, Northern would have a more straightforward unjust enrichment claim against Icon.

Whether it is "against equity and good conscience" to permit Icon to retain the settlement proceeds depends largely on the same disputed facts alleged in Boa's fraud cross-claim against Icon, namely whether Icon obtained a larger settlement amount, or perhaps any settlement at all, only because it misrepresented Northern's position in its Complaint and in communications with Boa. (Northern Opp. Memo. at 9, 12).   Icon defends itself here by raising many of the same arguments that it did against Boa's fraud claim -- that it "acted in a forthright manner" in its dealings with Northern, that it was not obligated to explain Northern's role in the litigation to Boa, and that the representations it made to Boa were "undeniably true."  (Icon Opp. Memo. Northern at 13-14; Icon Memo. Northern at 20).  Northern disagrees, and argues that its own contribution of "a significant portion of the Transaction funds," and the fact that it "worked equally with Icon in attempting to finalize the deal," entitle it to a more equitable split of the proceeds. (Northern Memo. at 10). Northern offers sufficient evidence of potential unfairness that a reasonable jury could conclude it would be inequitable if Icon retained the full amount paid by Boa to settle the Prior Action.

Icon argues that Northern is precluded from bringing an unjust enrichment claim because of its own conduct.  (Icon Memo. Northern at 23-25).  First, it contends that Northern is barred from raising

an unjust enrichment claim because of Northern's own unreasonable
behavior and unclean hands.  (Icon Memo. Northern at 23 (citing
Precision Instrument Manufacturing Co. v. Automative Maintenance
Machinery Co., 324 U.S. 806, 814 (1945)).   Northern was
unreasonable, Icon argues, because it employed a "wait-and-take
strategy" of relying on Icon's efforts in the Prior Action to
advance Northern's own claim, avoiding the burdens associated with
litigating the case and swooping in at the last moment to claim the
rewards.  (Icon Memo. Northern at 20, 23; Icon Opp. Memo. Northern
at 15).   Icon alleges that if Northern had given notice of its
position that Icon's "settlement with Boa required Northern's
consent," then Icon could have "come to terms with Northern, or if
there was no resolution, could have amended its pleading to name
Northern as a party to seek a judicial declaration of Northern's
rights."  (Icon Memo. Northern at 24; Icon Opp. Memo. Northern at
16).  Of course, Northern had already informed Icon of its position
that it had a claim to the fees and a claim to any of Icon's
settlement proceeds, at which point Icon essentially broke off
communications with Northern (Durkin 5/20/11 E-mail; Backer 6/3/11
E-mail), and Icon had already failed to plead Northern as a party,
as required under Rule 19(c) of the Federal Rules of Civil
Procedure.  If Northern succeeds on its unjust enrichment claim,
the jury may consider the extent to which Northern benefitted by

not participating in the Prior Action, including Icon's litigation costs, when it evaluates the amount of the settlement proceeds that Icon must surrender to Northern.

Additionally, Icon argues that Northern's behavior constituted a "disavowal to be involved in the Prior Action" and a lack of diligence in asserting its rights, and thus forecloses Northern from relief on an unjust enrichment claim. (Icon Memo. Northern at 22, 24-25 (citing Elmendorf v. Taylor, 23 U.S. 152 (1825) and Upton v. Tribilcock, 91 U.S. 45, 55 (1875)). Icon apparently believes that because Northern did not follow Icon's own preferred strategy, that is, it did not join the Prior Action, that Northern gave up alternatives to assert its rights to a claim in the Boa fees. Northern responds that it acted "properly" by "taking the step of attempting to negotiate a settlement with Boa before filing suit," even involving Mr. Backer in an attempt to reach a three-way resolution, and continuing to inform Icon during this process that it maintained its claim to a share of the liquidated damages. (Northern Opp. Memo. at 10-11). Thus, any "delay" in filing suit by Northern was not unreasonable and did not entitle Icon to pursue the full amount of damages for itself alone. (Northern Opp. Memo. at 10-11 (citing EMI Entertainment World, Inc. v. Karen Records, Inc., 603 F. Supp. 2d 759, 769 (S.D.N.Y. 2009) (pursuing settlement negotiations does not constitute unreasonable delay)). Icon has

failed to plead sufficient facts or cite clear authority supporting its position that Northern's actions constituted an unreasonable delay and waiver of its rights under an unjust enrichment theory.

For these reasons, Icon's motion for summary judgment on Northern's unjust enrichment and money had and received claims is denied.

E.   Northern's Claim Against Boa

Boa moves for summary judgment on Northern's claim that Boa breached the Commitment Letter contract by withdrawing from the Transaction, and offers three theories as to why it is entitled to judgment as a matter of law.[13]   First, Boa alleges that Northern's actions created apparent authority for Icon to act on its behalf and that Northern is thus bound by the Settlement Agreement between Boa and Icon, precluding any additional claims for damages by Northern itself. (Boa Memo. at 9-11).   Northern responds that Boa could not reasonably believe that Icon was acting as its agent, given that Northern was not a party to the Prior Action and Icon had refused to release Boa from claims by Northern.   (Northern Opp. Memo. at 15).   Second, Boa argues that the contractual provision on which Northern relies to calculate damages is an unenforceable liquidated damages clause that penalizes non-performance rather

---

[13] Northern has not cross-moved for summary judgment on this claim.

68

than serving as a reasonable estimation of compensation for losses resulting from Boa's breach. (Boa Memo. at 12-13; Boa's Answer, Defenses, and Cross-Claims at 10, ¶ 69). Northern responds that the damages set forth in the Commitment Letter and pleaded in the Complaint are reasonable and enforceable liquidated damages. (Northern Opp. Memo. at 17-18). Finally, Boa argues that it was Northern who first breached the Commitment Letter by failing to perform in a timely manner, and that this material delay prompted Boa to withdraw from the contract. (Boa Memo. at 14-15). Northern contests this characterization and claims it was ready to close the Transaction at the time Boa withdrew from the contract. (Northern Opp. Memo. at 16).

To succeed on its agency defense, Boa must demonstrate that (1) Northern's words or conduct gave rise to an appearance that Icon had the authority as its agent to enter into the settlement on behalf of Northern, and (2) that Boa reasonably relied on Icon's representations because of Northern's conduct. (Boa Memo. at 10-11); Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 551, 656 N.Y.S.2d 188, 191 (1997). However, as discussed above, the question of whether Boa's reliance on Icon's representations during the settlement negotiations was reasonable is a disputed issue of material fact. Drawing inferences in Northern's favor, a reasonable jury could find that Icon's explicit statement to Boa

69

that it could not waive any claims by Northern because Northern was an "entirely independent entity from Icon" precludes Boa from establishing as a matter of law that its reliance on Icon's statements was reasonable or that Northern's conduct suggested an agency relationship with Icon.  (Nastro/Traub 12/19/11 E-mails; Northern Opp. Memo. at 15).

In order to succeed on its contract claim against Boa, Northern must demonstrate that a contract existed between Northern and Boa; that Northern performed as required by the contract; that Boa breached the contract; and that Boa's breach resulted in damages to Northern.  <u>Northern Shipping Funds</u>, 2013 WL 1500333, at *7.  Boa alleges that Northern did not perform the contract, because it failed to finalize transaction documents and resolve outstanding conditions precedent, delaying the closing of the Transaction. (Boa Memo. at 14-15).  But both Northern and Icon allege that the Commitment Letter did not contain a deadline for completing the Transaction, and they contest Boa's assertion that the Arrangers caused any delay or were not prepared to execute it at the time Boa breached.  (Icon Response to Boa 56.1 Statement, ¶¶ 23-25; Northern Response to Boa 56.1 Statement, ¶¶ 23-25; Northern Opp. Memo. at 16).  This constitutes a genuine dispute of material fact; drawing inferences in Northern's favor, a reasonable jury

could credit Northern's (and Icon's) view that Boa was the first party to breach the Commitment Letter.

Boa's liquidated damages claim raises a matter of law properly considered on summary judgment.

### 1. Legal Standard

"Parties to a contract have the right, under New York law, to specify within a contract the damages to be paid in the event of a breach, so long as such a clause is neither unconscionable nor contrary to public policy." Rattigan v. Commodore Internationall Ltd., 739 F. Supp. 167, 169 (S.D.N.Y. 1990) (citing Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 368-69 (1977), and Mosler Safe Co. v. Maiden Lane Safe Deposit Co., 199 N.Y. 479, 485 (1910)). If a payment-on-breach clause "'is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts.'" Id. (quoting Brecher v. Laikin, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)). If not an attempt to estimate appropriate compensation to the non-breaching party for anticipated losses, but rather "'a means to compel performance, it will be deemed a penalty and will not be enforced.'" Id. (quoting Brecher v. Laikin, 430 F. Supp. 103, 106 (S.D.N.Y. 1977)). Whether the payment of a fee after breach of contract is "an enforceable liquidation of damages or an unenforceable penalty is a question of

law, giving due consideration to the nature of the contract and the circumstances." JMD Holding Corp. v. Congress Financial Corp., 4 N.Y. 3d 373, 379-80, 795 N.Y.S. 2d 502, 506 (2005); accord FCS Advisors, Inc. v. Fair Finance Co., 378 F. App'x 65, 68 (2d Cir. 2010).

The New York Court of Appeals has cautioned that courts should be reluctant to interfere with liquidated damages provisions, and only deem as unenforceable penalties those contracts where damages were "readily ascertainable" absent a liquidation clause or where the liquidated amount is "conspicuously disproportionate to [] forseeable losses" at the time of contract. JMD Holding, 4 N.Y.3d at 380, 795 N.Y.S. 2d at 507; see also Kingsbridge Medical Center, P.C. v. Hill, 357 F. Supp. 2d 754, 758 (S.D.N.Y. 2005) (amount must be "plainly or grossly disproportionate to the probable loss"). The court should also consider whether "the parties to the contract were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power," and whether the liquidated damages clause was "freely contracted to." Bigda v. Fischbach Corp., 849 F. Supp. 895, 902 (S.D.N.Y. 1994); accord Brookfield Asset Management, Inc. v. AIG Financial Products Corp., No. 09 Civ. 8285, 2010 WL 3910590, at *16 (S.D.N.Y. Sept. 29, 2010).

Boa bears the burden of showing "that the stated liquidated damages are, in fact, a penalty." JMD Holding, 4 N.Y.3d at 380, 795 N.Y.S. 2d at 506.   "If the [liquidated damages] clause is rejected as being a penalty, the recovery is limited to actual damages proven." JMD Holding, 4 N.Y.3d at 380, 795 N.Y.S. 2d at 507 (internal quotation marks omitted).

     2.   Application

Northern and Boa, two sophisticated parties, freely bargained the terms of a contract that included liquidated damages provisions in the event of Boa's nonperformance.   (Term Sheet at 23-24). Northern argues in its opposition memorandum that liquidated damages are reasonable because (1) actual damages werre difficult to ascertain at the time of the contract, and (2) the sum to be paid, around 2% of the total transaction amount, is not grossly disproportionate to forseeable losses and is similar to the 1-3% fees upheld in other damages provisions in this circuit. (Northern Opp. Memo. at 17-18 (citing JMD and Walter E. Heller & Co. v. American Flyers Airline Corp., 459 F.2d 896, 898 (2d Cir. 1972))). These arguments might be persuasive if this case were similar to JMD or Walter E. Heller & Co., where the courts had to examine ascertainability and disproportionality to determine whether a liquidated damages clause was compensating for losses or acting as

an unenforceable penalty.  Here, however, the plain language of the
contract answers that question.

The Term Sheet to the Commitment Letter includes two distinct
liquidated damages provisions.  The first clause, which Northern
does not invoke in this action, sets forth the anticipated damages
if Boa were <u>unable</u> to carry out the Transaction:

> In the event the Facility fails to close <u>because the Borrowers</u>
> <u>are unable to satisfy the Closing Conditions</u>, excluding those
> Closing Conditions numbered 2, 6, 10, 11, and 12, the
> Borrowers shall pay on demand half of the Arrangement Fee less
> any amount paid to the Arrangers on acceptance of the
> Commitment Letter.  The Arrangers shall retain that portion of
> the Arrangement Fee paid as liquidated damages <u>for loss of</u>
> <u>bargain and not as penalty</u>.

(Term Sheet at 23-24 (emphasis added)).  The second clause, on
which Northern relies, is only applicable where Boa <u>intentionally</u>
breaches the Commitment Letter:

> In the event the Facility fails to close <u>because the Borrowers</u>
> <u>actively or constructively break off from the negotiation, due</u>
> <u>diligence, or documentation process</u>, then the Borrower will
> pay on demand a sum equivalent to 50% of the sum of the
> Upfront Fee and the Arrangement Fee less any amount paid to
> the Arrangers on issuance of the Commitment Letter.

(Term Sheet at 24 (emphasis added)).  Significantly, the parties
included language in the first clause noting that payment of half
of the Arrangement Fee was intended to compensate for loss of
bargain and was not a penalty, an assertion that they did not make
when adding half of the Upfront Fee to the damages calculation in
the second clause, applicable to intentional breach of the contract

by Boa.  (Term Sheet at 23-24).  Although New York courts have held that the label used to describe damages provisions is "not material," Truck Rent-A-Center, Inc., 41 N.Y.2d 420 at 425, this language is still an indication of the parties' awareness of the potential penalizing nature of the second provision.

The difference between the two provisions is more than just language -- the inclusion of a portion of the Upfront Fee creates a significant disparity between the expected damages available under the first and second clauses.  In the initial post-breach e-mail demanding $1,137,195, the Upfront fee accounted for $700,000, and the remaining $437,195 was attributable to the unpaid portion of the Arrangement Fee and other costs and expenses.  (Backer 12/23/10 E-mail).  In other words, based on this initial demand calculation, the amount due under the second liquidation clause is over 2.5 times greater than the amount due under the first clause. However, Northern does not contest Boa's assertion that the two clauses provide a measure of estimated damages "for the same occurrence, i.e., cancellation of the Transaction" -- or in the contractual language, "[i]n the event the Facility fails to close" -- and that the only difference between the scenarios in the two clauses is the reason for Boa's breach, not Northern's anticipated losses.  (Boa Memo. at 13; Boa Reply at 3; Term Sheet at 23-24).

Taken together, the "not [a] penalty" language of the first clause and the more than doubling of damages in the second clause provides sufficient evidence that the purpose of the second provision was not to provide a reasonable estimate for compensation of Northern's damages in the event of a breach by Boa, but rather to compel Boa's performance and penalize it for a willful breach. This is a penalty contrary to public policy and will not be enforced.

Because this second clause is invalid, and the first clause in the Term Sheet (on which Northern does not rely) applies only where Boa fails to meet Closing Conditions (which Northern has not alleged), "recovery is limited to actual damages proven." <u>JMD Holding</u>, 4 N.Y.3d at 380, 795 N.Y.S.2d at 507 (internal quotation marks omitted). In the Complaint, Northern relied almost exclusively on the now-rejected liquidated damages clause. (Complaint, ¶¶ 20, 24; Boa Memo. at 14; Boa Reply at 3). Northern pleaded damages amounting to $569,753, which is approximately half of the $1,137,195.52 demanded by Mr. Backer in the December 23, 2010 e-mail, and attributed this demand to "all fees, costs, and expenses associated with preparing the Transaction" in addition to "50% of the Arrangement and Upfront Fees" under the liquidated damages clause. (Complaint, ¶¶ 61, 65).

Indeed, the only indication that Northern incurred losses resulting from Boa's breach is this assertion that Boa is obligated to "reimburse Northern for all fees, costs, and expenses associated with preparing the Transaction." (Complaint, ¶¶ 40, 61, 63). Elsewhere, Northern specifies that it is entitled to "legal fees, travel costs, and other expenses" incurred during that period. (Complaint, ¶ 24). Based on the parties' submissions, it appears that most of the legal fees, travel expenses, and inspection costs were to be paid (and, indeed, have been paid) with the $300,000 deposit that Boa gave Icon; Northern and Icon anticipated that this amount would in fact exceed their fees and expenses, and agreed to evenly split the remaining sum, which currently amounts to approximately $84,500. (Backer 12/23/10 E-mail; E-mail of John Hartigan dated March 31, 2011, attached as Exh. 18 to Johnston Decl.; Northern 56.1 Statement, ¶¶ 25-26, 54, 73; Icon Response to Northern 56.1 Statement, ¶¶ 25-26, 54, 73). However, to the extent Northern has other expenses and costs that remain uncompensated, it may pursue them in its claim against Boa. See Schatzki v. Weiser Capital Management, LLC, No. 10 Civ. 4685, 2012 WL 169779, at *7 (S.D.N.Y. Jan. 19, 2012) (denying summary judgment despite "scant" evidence of damages); Acumen Re Management Corp. v. General Security National Insurance Co., No. 09 Civ. 1796, 2012 WL 3890128, at *11 (S.D.N.Y. Sept. 7, 2012) ("That damages are uncertain, or

may not even exist, is an insufficient reason under New York law to grant [d]efendant's motion for summary judgment."), <u>reconsideration denied</u>, 2012 WL 6053936 (S.D.N.Y. Dec. 4, 2012)

Northern does not plead in its Complaint, nor explicitly argue in its opposition memorandum to Boa's motion, that the liquidated damages provision was a reasonable attempt to estimate anticipated losses of, for example, interest income or forgone investment opportunities, nor that it actually suffered such damages.[14]  As noted above, Northern does cite <u>Walter E. Heller</u>, 459 F.2d at 898-99, a case upholding a liquidated damage clause in a contract to provide loan financing. (Northern Opp. Memo. at 17-18).  But while Northern points out many similarities between that case and this one -- a contract between sophisticated parties, a similar liquidated damages fee amounting to 3% of the total loan amount, and similar expenses such as locating investors and retaining legal counsel -- the one comparison it fails to draw is whether, like in <u>Walter E. Heller</u>, the actual damages in this case were "difficult

_____

[14]  By contrast, in the Prior Action, Icon pleaded that it had "suffered various contractually agreed upon and other damages in the form of lost arrangement and upfront fees, <u>lost interest income</u>, legal expenses and consulting fees and other related expenses." (Complaint in Prior Action, ¶ 1 (emphasis added)). Icon further elaborated that it "was forced to divert resources from other potential Borrowers and other financing and business opportunities" in reliance on the Commitment Letter. (Complaint in Prior Action, ¶ 29).

to determine in advance" and whether Northern also "incur[red] loss of interest income" and "had to restrict lending activity to make the loan funds available." (Northern Opp. Memo. at 17-18). Northern merely asserts that it incurred expenses and fees, again referring to "effort and resources [expended] in attempting to complete the Transaction, including, but not limited to, locating potential investors, retaining legal counsel, and arranging for the inspections of the Boa vessels," and reiterates its position that the damages provision is enforceable. (Northern Opp. Memo. at 18-19).

At this juncture it is too late for Northern to seek damages based on theories or calculations that have not previously been raised and were not subject to discovery. See, e.g., L-7 Designs, Inc. v. Old Navy, LLC, __ F. Supp. 2d __, __, 2013 WL 4569979, at *15-16 (S.D.N.Y. 2013) (plaintiff limited to providing evidence of lost income and expenses that it had produced in discovery); Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2009) (holding that it was too late for party to offer damages calculations that were not provided in fact and expert discovery); cf. Hospital Authority of Rockdale County v. GS Capital Partners V Fund, L.P., No. 09 Civ. 8716, 2013 WL 840851, at *9 (S.D.N.Y. Mar. 6, 2013) (granting summary judgment where party "failed to provide any factual basis for the damages alleged" and did not offer

evidence that lost profits were "reasonably certain and directly traceable to the breach"). Northern may seek to recover any outstanding fees or expenses incurred in preparation for the Transaction, but is precluded from seeking lost interest income, lost profits, or damages from missed investment opportunities as new theories of recovery.

Boa's motion for summary judgment as to Northern's contract claim is denied.

<u>Conclusion</u>

For the foregoing reasons, Icon's motion for summary judgment against Northern (Docket no. 61) is granted as to the breach of contract claim and denied as to the other claims; Icon's motion for summary judgment against Boa (Docket no. 65) is denied; Boa's motion for summary judgment against Northern and Icon (Docket no. 57) is granted as to Northern's claim for liquidated damages and otherwise denied; and Northern's motion for summary judgment against Icon (Docket no. 74) is denied. The parties shall submit the joint pretrial order within 30 days.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

```
Dated:     New York, New York
           February 24, 2014
```

Copies mailed this date:

```
Phillip R. Schatz, Esq.
Kristin Marlowe, Esq.
Wrobel & Schatz LLP
1040 Avenue of the Americas
11th Floor
New York, NY 10018

Thomas O. Johnston, Esq.
Porzio, Bromberg & Newman, P.C.
156 West 56th Street, Suite 803
New York, NY 10019

Michael D. Traub, Esq.
Akerman Senterfitt LLP
335 Madison Avenue
New York, NY 10017
```